# Illinois Official Reports

## Supreme Court

***People v. Rizzo*, 2016 IL 118599**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. VINCENT RIZZO, Appellee. |
| Docket No. | 118599 |
| Filed<br>Rehearing denied | June 16, 2016<br>September 26, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County; the Hon. Deborah J. Gubin, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, Veronica Calderon Malavia, and Annette N. Collins, Assistant State's Attorneys, of counsel), for the People.<br><br>Ilia Usharovich, of Wheeling, for appellee.<br><br>John R. Zemater, Jr., of Aurora, *amicus curiae*.<br><br>Donald J. Ramsell, of Wheaton, and Umberto S. Davi, of Springfield, for *amici curiae* Illinois State Bar Association *et al.* |

Justices                           JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Thomas, Kilbride, and Theis concurred in the judgment and opinion.

Justice Burke specially concurred, with opinion, joined by Justice Freeman.

**OPINION**

¶ 1      At issue in this case is the constitutionality of the 2012 version of section 5-6-1(p) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-6-1(p) (West 2012)), which, in pertinent part, precluded a disposition of supervision for those who have violated the speed parameters of section 11-601.5 of the Illinois Vehicle Code (625 ILCS 5/11-601.5 (West 2012)).[1] Defendant was charged with, *inter alia*, a violation of section 11-601.5(b) and moved to dismiss that charge on constitutional grounds. The circuit court of Cook County ultimately entered an order concluding that section 5-6-1(p)'s prohibition of supervision as a disposition in this context is "unconstitutional as violating the proportionate penalties clause, Article I, Section 11 of the Illinois Constitution." In Rule 18 findings appended to the order (see Ill. S. Ct. R. 18 (eff. Sept. 1, 2006)), the court stated that "[t]he constitutional provisions upon which the finding is based include due process, equal protection of the law and violation of the proportional [*sic*] penalties clause." The court purported to find the statute "unconstitutional on it[s] face and as applied to the case *sub judice.*" The State appealed. Because the circuit court's judgment invalidated a statute of the state of Illinois, the appeal was taken directly to this court pursuant to Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013). We reverse the judgment of the circuit court and remand for further proceedings.

¶ 2                       BACKGROUND

¶ 3      On September 17, 2013, defendant, Vincent Rizzo, was charged by uniform citation and complaint forms with (1) a violation of section 11-601.5(b) of the Vehicle Code (625 ILCS 5/11-601.5(b) (West 2012) ("A person who drives a vehicle *** at a speed that is 40 miles per hour or more in excess of the applicable maximum speed limit *** commits a Class A misdemeanor.")) [2] in that he allegedly drove his vehicle 100 miles per hour in a 55-mile-per-hour speed zone and (2) a violation of section 11-709 of the Vehicle Code (625

---

[1]Effective January 1, 2016, section 5-6-1 was amended to narrow the prohibition to violators previously convicted of a violation of section 11-601.5, those who have previously been placed on supervision for a violation thereof, or irrespective of any previous violations, someone who "was operating a vehicle, in an urban district, at a speed that is 26 miles per hour or more in excess of the applicable maximum speed limit." Pub. Act 99-212, § 5 (eff. Jan. 1, 2016) (amending 730 ILCS 5/5-6-1(p), (q) (West 2014)).

[2]The statutory threshold for subsection (b) was subsequently lowered to 35 miles per hour over the posted speed limit. See Pub. Act 98-511, § 5 (eff. Jan. 1, 2014).

ILCS 5/11-709(a) (West 2012) (improper lane usage)) in that he allegedly "cut in between two semi-trucks at [a] high rate of speed."

¶ 4 Defendant, through counsel, filed a motion to dismiss the section 11-601.5(b) charge on constitutional grounds. Although defendant's arguments therein are at times confusing and ill-defined, defendant presented discernible arguments that (1) the 2012 version of section 5-6-1(p) of the Unified Code violates principles of due process and the Illinois Constitution's proportionate penalties clause (Ill. Const. 1970, art. I, § 11),[3] insofar as that section precludes entry of an order for court supervision where a defendant, as here, is charged with violating section 11-601.5(b) of the Vehicle Code (see 730 ILCS 5/5-6-1(c), (p) (West 2012)), and (2) the legislature's classification of said violation as a Class A misdemeanor, subject to strict liability, contravenes the same constitutional provisions. In an argument heading, defendant also suggested a violation of equal protection; however, there appears to be no correlative argument or supporting citations in the body of his motion.

¶ 5 Though defendant did not specify whether his constitutional challenges were facial, as applied, or both, the body of his motion offered only hypothetical situations wherein defense counsel believed the statutes might violate constitutional rights, and there was no attempt to show how the statutes would operate unconstitutionally in defendant's circumstances. No hearing was ever held to adduce facts specific to the disposition or penalty that might reasonably be imposed upon this particular defendant.

¶ 6 In its response, the State argued that (1) "a defendant's eligibility—or lack therefore [*sic*]—for supervision is not constitutionally significant"; (2) the statutory elements of "aggravated speeding" and reckless driving are not, as defendant argued, identical for purposes of proportionate penalty analysis; and (3) the statutory preclusion of supervision as a disposition for section 11-601.5 violations is neither "so wholly disproportionate to the offense as to shock the moral sense of the community"—for purposes of proportionate penalty analysis—nor does it lack a "reasonable relationship between the legislature's purpose and the statute"—for purposes of due process.

¶ 7 With respect to due process, the State concluded, "increasing a criminal penalty" for a violation of section 11-601.5, via mandatory misdemeanor conviction, "bears a rational relationship to the government's purpose," in that it "decreases the likelihood people will take certain actions (here speed)." With respect to the proportionate penalties clause, the State noted that "the actual, statutory elements" of reckless driving and "aggravated speeding" are not identical and submitted:

> "[Defendant] can't show that denying supervision to aggravated speeders 'shocks the moral sense of the community' or that reckless driving and aggravated speeding are identical crimes. Put bluntly, the Defendant's invocation of a constitutional provision that deals with sentences of death, torture, and life imprisonment, an invocation made without a single case suggesting that the ability to receive supervision is constitutionally significant, trivializes the Constitution."

---

[3] Although the parties sporadically referenced the eighth amendment to the United States Constitution (U.S. Const., amend. VIII), because their principal arguments pertain to the Illinois Constitution's proportionate penalties clause, and this court has interpreted the scope of the latter to be more expansive than the former (see *People v. Clemons*, 2012 IL 107821, ¶ 40), we will not treat the eighth amendment separately herein.

¶ 8        Defendant filed a reply insisting, *inter alia*, that aggravated speeding and reckless driving share identical elements. Therefore, defendant reasoned the divergent dispositional range, *i.e.*, the preclusion of supervision as a dispositional option for a violation of section 11-601.5, violates the proportionate penalties clause.

¶ 9        Following hearings on the matter, the court filed a memorandum opinion and order on August 12, 2014. Therein, the circuit court declared section 5-6-1(p) of the Unified Code unconstitutional insofar as it "denies supervision to offenders of 625 ILCS 5/11-601.5." The court specified: "This finding is limited to the denial of supervision. It does not affect the validity of the crime of Aggravated Speeding as either an [*sic*] Class B or A misdemeanor."

¶ 10        En route to its conclusion, the court determined: "Given the serious problems individuals operating a vehicle at an excessive speed can cause, Illinois had a legitimate interest in enacting legislation defining and criminalizing excessive speeding. There is no violation of either Due Process or Equal Protection in designating excessive speeding as a misdemeanor."

¶ 11        Turning to defendant's proportionate penalties claim, the court first found no violation via application of the identical elements approach. The court rejected defendant's contention that the offenses of reckless driving, for which supervision is an authorized disposition, and aggravated speeding, for which it was prohibited, share identical elements. The court observed that reckless driving requires the driver to act with a willful and wanton disregard for the safety of persons or property and, to so act, the driver must be proven to have consciously disregarded a substantial and unjustifiable risk in that regard. The court further noted that the legislature had considered making driving 40 miles per hour or more over the speed limit *prima facie* evidence of reckless driving but had ultimately declined to do so. The court observed:

> "The speed of a vehicle may be evidence of willful and wanton conduct but it is not an element of the charge [of reckless driving] and need not be proven. Aggravated Speeding requires proof of the specific speed the vehicle was going. There is no need to show willful or wanton conduct on the part of the driver. The elements in the two statutes are different so they may not be considered identical for purposes of the proportionate penalties clause."

¶ 12        However, the court went on to find that denying the dispositional option of court supervision where a defendant has exceeded the speed limit by 40 miles per hour or more—here, allegedly, 100 miles per hour in a 55-mile-per-hour zone—is indeed "cruel and degrading punishment." In arriving at that conclusion, the court compared aggravated speeding to other misdemeanors for which supervision is precluded—misdemeanors that the court deemed more serious because of elements of bodily injury or physical harm to property—and offenses like driving while license revoked or suspended, driving under the influence, driving without insurance, and theft, for which first-offense supervision is allowed. The court remarked on hypothetical collateral consequences attendant to a misdemeanor conviction. The judge also suggested that the legislature should have "given us their reasons for denying supervision to anyone convicted of Aggravated Speeding" and should "have *** informed us as to whether they were attempting to Prevent, Restrain, Rehabilitate, Deter, Educate or require Retribution." Although the court acknowledged that "excessive speeding has the potential of creating grave injury to the public," it again compared the legislature's dispositional determination here to those for other offenses, where different elements are concerned: "The sentencing provision here, unlike many others in the criminal and motor

vehicle codes does not differentiate between first offenders[,] circumstances surrounding the crime (injury or property damage)[,] or other aggravating factors found in the elements of other misdemeanors where there is mandatory denial of supervision."

¶ 13    Citing dictionary definitions of "cruel"—"to inflict pain or suffering"—and "degrading"—"to reduce in grade, status; *** to expose to contempt, dishonor or disgrace"—the court concluded that denying the option of supervision where a defendant is guilty of driving 40 miles per hour over the speed limit qualifies as "cruel and degrading punishment." The gist of the court's reasoning is summarized in the following excerpt, which seemingly melds various constitutional standards and concerns—such as proportionate penalties, due process, and separation of powers—in order to strike down the statute under the guise of proportionate penalty review:

> "Mandating a conviction for a first offender for speeding where they [*sic*] may or may not have been mitigating factors, with no showing of physical harm, no showing of property damage, no showing of an intentional act or a showing of any surrounding circumstances is cruel and degrading. This is seen when the ramifications of a conviction are considered as well as the crime itself. There does not appear to be a relationship between the penalty and the crime alleged. The legislature has not given nor does there appear to be a rational basis for removing judicial discretion concerning sentencing for at least first time offenders. Clearly absent some serious repercussion from excessive speeding judges must be able to decide the appropriate sentence on a case by case basis."

¶ 14    In Rule 18 findings appended to the court's opinion and order, the court stated: "The only portion of this statute that is unconstitutional is the denial of supervision to first offenders. The statute may stand as creating different levels of misdemeanors for individuals speeding in excess of specific amounts over posted speed limits." Although the court's declaration of unconstitutionality in the body of its order was premised solely upon a violation of the proportionate penalties clause, in its Rule 18 findings the court indicated "[t]he constitutional provisions upon which [the declaration] is based include due process of law, equal protection of the law and violation of the proportional [*sic*] penalties clause." The court found the pertinent portion of the statute "unconstitutional on it [*sic*] face and as applied to the case *sub judice*." The court averred that the statute cannot reasonably be construed in a manner that would preserve its validity, opining: "A mandatory conviction for any violation of Aggravated Speeding without review of specifics of the facts or of the defendant's background is not reasonably designed to remedy of [*sic*] the particular evil the legislature was targeting."

¶ 15    The State filed a motion to reconsider, raising three main points in support thereof: (1) a recent opinion from this court, *In re Derrico G.*, 2014 IL 114463, wherein this court affirmed, as constitutional, limitations on a trial court's ability to order a disposition of supervision; (2) "the possibility that this case could have been decided on non-constitutional grounds"; and (3) lack of case law supporting the court's finding.

¶ 16    With respect to its first point, the State noted that this court in *In re Derrico G.* addressed the constitutionality of a statute (705 ILCS 405/5-615(1), (2) (West 2010)) which, at the time, effectively allowed supervision in certain juvenile cases only with the consent of the State's Attorney. The circuit court ruled the statute unconstitutional, and this court reversed. The State, in this case, admitted that the contexts "are not identical" but maintained that *Derrico G.*

offered additional support for the State's contention that no Illinois court of review "has ever so much as hinted that a defendant's ineligibility for supervision is unconstitutional." The State suggested "if a statute giving the State's Attorney veto power over supervision is constitutional, it is hard to see how a statute barring all offenders from supervision is unconstitutional."

¶ 17 With respect to its second point, the State averred that the court had found the pertinent portion of the statute would be unconstitutional as applied to first offenders, and the court had suggested there are constitutional implications in denying a circuit court the ability to consider a defendant's background in the dispositional phase of proceedings; however, the State observed, "there is no evidence in the record to suggest that the Defendant *is* a first offender," and "[i]f the Defendant's background and the facts of the case were such that the Court would not give him supervision, the Court's decision *could* 'rest on an alternative ground' under Rule 18(c)(1)." (Emphases in original.)

¶ 18 In support of its argument, the State attached, as an exhibit, defendant's certified driving abstract. As the State noted, the abstract showed, before his arrest in this case, the defendant had two prior convictions and four prior dispositions of supervision for moving violations. Defendant had prior convictions for driving on the left side of the road where prohibited and disregarding a stop/yield sign at an intersection. He had been afforded the consideration of supervision four times: twice for driving 15 to 25 miles per hour over the speed limit, once for disregarding a stop/yield sign, and once for driving the wrong way on a one-way street or highway.

¶ 19 For its third point, the State observed that the court had not offered any case law in support of its key propositions. Quoting our decision in *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005), the State noted that courts "generally defer to the legislature in the sentencing arena because the legislature is institutionally better equipped to gauge the seriousness of various offenses and to fashion sentences accordingly." The State took issue with the court's reliance upon "the various unpleasant consequences of a misdemeanor conviction," pointing out that case law holds the proportionate penalties clause and the eighth amendment are concerned only with "*direct action by the government* to inflict punishment" (emphasis in original), and the "collateral consequences by some other actor," upon which the court relied, are simply irrelevant. Finally, the State observed that the court, in its Rule 18 findings, stated that the statute violates the constitutional principles of due process and equal protection; however, "the opinion lacks any analysis or case law explaining, for instance, what exact legislative classification is being made, what test that classification is subject to, any [*sic*] why that classification is unconstitutional."

¶ 20 Defense counsel filed a response to the State's motion, arguing that the motion to reconsider was "improper" in that, according to defense counsel, the "motion does not inform the trial court of newly discovered evidence that was unavailable at the time of the original hearing, does not alert the court to changes in the law, and does not apprise the court of any errors it made in its application of existing law."

¶ 21 After a brief hearing, the circuit court denied the State's motion without further comment. The State filed a timely notice of appeal.

¶ 22                                                ANALYSIS

¶ 23          We begin with applicable standards, which favor upholding the constitutionality of a challenged statute. As this court has *often* emphasized, "Constitutional challenges carry the heavy burden of successfully rebutting the strong judicial presumption that statutes are constitutional." *People v. Patterson*, 2014 IL 115102, ¶ 90. That presumption applies with equal force to legislative enactments that declare and define conduct constituting a crime and determine the penalties imposed for such conduct. *People v. Dunigan*, 165 Ill. 2d 235, 244 (1995). "To overcome this presumption, the party challenging the statute must clearly establish that it violates the constitution." *Sharpe*, 216 Ill. 2d at 487. Courts have a duty to uphold the constitutionality of a statute whenever reasonably possible, resolving any doubts in favor of the statute's validity. *Patterson*, 2014 IL 115102, ¶ 90. The constitutionality of a statute is a matter of law, and accordingly we review the circuit court's conclusion *de novo. Sharpe*, 216 Ill. 2d at 486-87.

¶ 24          This court has recently reiterated that facial and as-applied challenges are not interchangeable, and there are fundamental distinctions between them. *People v. Thompson*, 2015 IL 118151, ¶ 36. "An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party. [Citation.] In contrast, a facial challenge requires a showing that the statute is unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant." *Id.* The burden on the challenger is particularly heavy when a facial constitutional challenge is presented. *Bartlow v. Costigan*, 2014 IL 115152, ¶ 18. "The fact that the statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 33. So long as there exists a situation in which the statute could be validly applied, a facial challenge must fail. *People v. Davis*, 2014 IL 115595, ¶ 25; *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002).

¶ 25          In this case, the circuit court stated, in its Rule 18 findings, that it was holding the statute unconstitutional facially *and* as applied; however, in the latter regard, prior to the court's ruling, there was no evidence adduced as to the "facts and circumstances" of the defendant or any discussion of how the statute would adversely affect defendant specifically. Nor does the court's opinion and order contain any discussion or analysis of this defendant's circumstances, *i.e.*, his relevant background or the circumstances of the alleged offense, though the circuit court bemoaned the statutory impediment to consideration of those very factors.

¶ 26          As we recently reiterated in *People v. Mosley*, 2015 IL 115872:

              " 'A court is not capable of making an 'as applied' determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional 'as applied' is premature.' " *Mosley*, 2015 IL 115872, ¶ 47 (quoting *In re Parentage of John M.*, 212 Ill. 2d 253, 268 (2004)).

Because there was no evidentiary hearing and there were no findings of fact, the circuit court could not have made a separate as-applied finding. "When there has been no evidentiary hearing and no findings of fact, the constitutional challenge must be facial." *Mosley*, 2015 IL 115872, ¶ 49. In any event, the court's as-applied finding would be irrelevant in light of its finding that the statutory provision was facially unconstitutional, since "a facial challenge

requires a showing that the statute is unconstitutional under *any* set of facts." (Emphasis added.) *People v. Thompson*, 2015 IL 118151, ¶ 36.

¶ 27 We note, at the outset, that the circuit court's opinion and order contains an ambiguous analysis and ill-defined concerns en route to its conclusion that section 5-6-1(p) is unconstitutional. The final paragraph of the order appears to identify only a violation of the proportionate penalties clause; however, the court's references in its Rule 18 findings to due process and equal protection concerns muddy the waters in that regard. We nonetheless believe the court's finding of unconstitutionality is grounded upon a perceived violation of the proportionate penalties clause—because the court says so in the concluding paragraph of its order proper—and we will proceed principally on that basis. However, because the circuit court used due process terminology in portions of the order ostensibly dealing with proportionate penalty concerns, we will briefly address aspects of due process. We will not address equal protection at all, as defendant did not present any argument in that regard, and the circuit court's order is bereft of any equal protection analysis. Simply saying, in Rule 18 findings, that a finding of unconstitutionality is based upon equal protection does not make it so. With those qualifications, we address the proportionate penalty issue.

¶ 28 As this court recently observed in *People v. Williams*, 2015 IL 117470, ¶ 9, a proportionality challenge derives from article I, section 11, of the Illinois Constitution of 1970. Section 11, commonly referred to as the proportionate penalties clause, provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. After our decision in *Sharpe*—jettisoning the "problematic and unworkable" cross-comparison approach to proportionate penalties review (*Sharpe*, 216 Ill. 2d at 519)—two bases remain for mounting a proportionate penalties challenge. A defendant can argue that the "penalty for a particular offense is too severe under the 'cruel or degrading' standard *or* that the penalty is harsher than the penalty for a different offense that contains identical elements." (Emphasis added.) *Williams*, 2015 IL 117470, ¶ 9. Defendant in this case tried both approaches.

¶ 29 The circuit court rejected the latter, noting that the crime of reckless driving—the offense with which defendant compared aggravated speeding, for purposes of the identical elements test—"requires the driver to act with a willful and wanton disregard for the safety of persons and property," which, the court aptly observed, "is clearly not an element of Aggravated Speeding." Conversely, the court noted: "Aggravated Speeding requires proof of the specific speed the vehicle was going. There is no need to show willful and wanton conduct on the part of the driver. The elements in the two statutes are different so they may not be considered identical for purposes of the proportionate penalties clause." In its opinion and order, the court also specifically referenced the legislature's decision to treat the two offenses separately. We find the circuit court's identical elements analysis sound.

¶ 30 Not so with respect to the remainder of the court's proportionate penalty analysis. The circuit court commences that discussion with the question: "Is the penalty such that is [*sic*] cruel and degrading?" The court then cites our decision in *Sharpe* for the proposition that a penalty violates the proportionate penalties clause when "the greater penalty [is] so disproportionate that it shock[s] the moral sense of the community or [is] cruel and degrading." What follows is a proportionate penalty analysis that, first, attempts to compare section 11-601.5(b) violations to other traffic offenses, misdemeanors, and felonies for which a

disposition of supervision is prohibited, or for which supervision *is* allowed for a first offense, then *suggests*—without any meaningful discussion—that aggravated speeding poses a lesser threat to public health or safety:

> "Unlike many of the other misdemeanors precluded from receiving a sentence of supervision[,] here bodily injury is not an element in Aggravated Speeding. There is not an element of physical harm to property. Many of the statutes listed allow supervision if it is the first offense, such as Driving on Revoked or Suspended License; Driving Under the Influence; Driving Without Insurance; or Theft."

¶ 31 The circuit court then goes on to cite possible, collateral consequences of conviction as relevant to its finding: "It will be a misdemeanor conviction that would need to be disclosed on job applications and loan applications. It could be a basis for denial of a mortgage, student loan or employment." In the same paragraph, the court references undeveloped concerns over mandatory sentencing and possible separation-of-power considerations: "It should be noted the denial of supervision for Aggravated Speeding does not consider the prior driving history of the offender *** [n]or does the mandatory conviction requirement allow the judge to consider the circumstances of the speeding in the case before them."

¶ 32 In the midst of what is represented to be a proportionate penalty analysis, the court states that "[s]ubstantive due process requires the sentence be related to an injury to the Public." In that paragraph, the court suggests that the legislature is required to furnish a statement as to the goal of this legislation, noting that the "legislature has not given us their reasons for denying supervision to anyone convicted of Aggravated Speeding, nor have they informed us as to whether they were attempting to Prevent, Restrain, Rehabilitate, Deter, Educate or require Retribution."

¶ 33 The court does eventually acknowledge that "excessive speeding has the potential of creating grave injury to the public"—something legislators may have considered when they assigned the then-extant penalty range—however, the court immediately observes "[i]t is a potential, not a given, not an absolute." Again, the court compares "[t]he sentencing provision here" to "many others in the criminal and motor vehicle codes" that "differentiate between first offenders" and allow for consideration of "circumstances surrounding the crime (injury or property damage)." Reiterating the question posed at the outset of what is represented to be a proportionate penalty analysis, the court again asks: "[D]oes the denial of supervision amount to cruel and degrading punishment?" The court's answer, after consulting a dictionary of general usage and taking into account all of the foregoing considerations, is yes.

¶ 34 We note, initially, that the parties dispute, as a threshold matter, whether the legislature's exclusion of supervision as an available disposition *can* run afoul of the proportionate penalties clause, the State arguing that supervision is neither a "punishment" nor a sentence, but rather "a statutory deferral of prosecution and possible avoidance of any judgment of conviction," and that even "a 'conviction' alone cannot be unconstitutionally disproportionate since it is not even a *specific* sentence."

¶ 35 We will *assume*, solely for purposes of this analysis, that supervision may constitute a "penalty" that represents the lowest range of a possible dispositional framework for a misdemeanor. This court has stated: "Viewed realistically, supervision with conditions attached (reporting, restitution, *etc*.) involves the imposition of a penalty despite the fact that defendant has not been found guilty, or an earlier finding of guilt has been vacated." *People v.*

*Breen*, 62 Ill. 2d 323, 326 (1976). However, even *assuming* that a disposition of supervision can be considered part of a "penalty" framework for purposes of proportionate penalty analysis, legislative restrictions on its availability, or withholding the option altogether,[4] cannot, under these circumstances, violate constitutional safeguards.

¶ 36   As this court observed in *Sharpe*:

"We generally defer to the legislature in the sentencing arena because the legislature is institutionally better equipped to gauge the seriousness of various offenses and to fashion sentences accordingly. [Citation.] The legislature's discretion in setting criminal penalties is broad, and courts generally decline to overrule legislative determinations in this area unless the challenged penalty is clearly in excess of the general constitutional limitations on this authority." *Sharpe*, 216 Ill. 2d at 487.

¶ 37   In this context, this court has stated—more than once:

" 'When the legislature has authorized a designated punishment for a specified crime, it must be regarded that its action represents *the general moral ideas of the people*, and the courts will not hold the punishment so authorized as either cruel and unusual, or not proportioned to the nature of the offense, unless it is a cruel or degrading punishment not known to the common law, or is a degrading punishment which had become obsolete in the State prior to the adoption of its constitution, or is so wholly disproportioned to the offense committed as to shock the moral sense of the community.' " (Emphasis added.) *People v. Miller*, 202 Ill. 2d 328, 339 (2002) (quoting *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 421-22 (1894)).

In other words, the fact that the legislature "has authorized a designated punishment for a specified crime" *itself* says something about the "general moral ideas of the people" with respect thereto, though obviously that designation is not determinative.

¶ 38   In *Miller*, this court noted that it has never defined what kind of punishment qualifies as "cruel" and "degrading" or "so wholly disproportioned to the offense as to shock the moral sense of the community." *Miller*, 202 Ill. 2d at 339. "This is so because, as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *Id.* Objective evidence may be considered in this inquiry, but it does not wholly determine the controversy, because, in the end, the constitution contemplates that our own judgment will be brought to bear on the question. *Id.* at 339-40. In that endeavor, "[w]e review the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency." *Id.* at 340.

¶ 39   The mandatory requirement of conviction upon a finding of guilt, as opposed to the dispositional option of supervision, does not, in itself, violate the proportionate penalties clause. In *Sharpe*, for example, we rejected defendant's contention that, by setting forth lengthy mandatory minimum sentences for murder involving a firearm, the legislature had failed to consider the objective of restoring the offender to useful citizenship, as required by the proportionate penalties clause:

---

[4]In *Breen*, this court made clear that "absent appropriate legislation, a trial judge is without authority to place a defendant on supervision." *Breen*, 62 Ill. 2d at 328. The disposition of supervision was not statutorily authorized until 1977.

" 'Our court has previously rejected claims that the legislature violates article I, section 11, when it enacts statutes imposing mandatory minimum sentences. Our decisions have recognized that the legislature's power necessarily includes the authority to establish mandatory minimum sentences, even though such sentences, by definition, restrict the inquiry and function of the judiciary in imposing sentence.' " *Sharpe*, 216 Ill. 2d at 525 (quoting *Dunigan*, 165 Ill. 2d at 245).

In fixing a penalty for an offense, the possibility of rehabilitation is not given greater weight or consideration than the seriousness of the offense. *Sharpe*, 216 Ill. 2d at 525 (citing *People v. Taylor*, 102 Ill. 2d 201, 206 (1984) (upholding, against proportionate penalty challenge, a statute that mandates a sentence of natural life for murdering more than one victim)).

¶ 40    In this case, the circuit court did not find the Class A penalty range for a conviction under section 11-601.5(b)—which included imprisonment of up to a year in jail—cruel and degrading nor violative of due process; it was only the then-existing, comprehensive prohibition of the dispositional option of *supervision* that was "cruel" and "degrading." It was only preclusion of the opportunity to come away with a clean record—after having been apprehended driving more than 40 miles per hour over the speed limit—that the judge considered "cruel" and "degrading." Though the judge acknowledged that "excessive speeding has the potential of creating grave injury to the public," and she was in fact presiding over a case in which defendant was alleged to have driven 100 miles per hour in a 55-mile-per-hour zone, cutting in between semitrucks at a high rate of speed, she nonetheless determined the "potential" of "grave injury" was insufficient to justify the legislature's determination, at that point in time, that supervision was not an appropriate disposition, under any circumstances. The court considered the flat ban on supervision, for those who had exposed the public to the potential of "grave injury," to be "cruel" and "degrading."

¶ 41    In our view, the legislature's prohibition of the dispositional option of supervision, in this context, does not even approach the "cruel and degrading" standard requisite for a finding of unconstitutionality. We do not believe our society has devolved to the permissive point that the legislature is obligated to provide an escape hatch for those who have shown such a blatant disregard for posted speed restrictions. We have, in the context of our community's evolving standards of decency, reviewed and considered the gravity of defendant's alleged offense in connection with the severity of the statutorily mandated sentence then set by the legislature. Our consciences are not shocked by the prohibition, individually or collectively. It appears the circuit court reached its result through application of the proportionate penalty analysis this court rejected in *Sharpe*.

¶ 42    While discussing what is "cruel" and "degrading," the analysis actually uses comparisons of this offense, and its prescribed "penalty" framework, with other offenses with different elements and the penalties assigned to them. This approach is precisely what we abandoned in *Sharpe*. In *Sharpe*, this court concluded:

"[C]ross-comparison analysis has proved to be nothing but problematic and unworkable, and *** it needs to be abandoned. Those cases that used such an analysis to invalidate a penalty are overruled, and this court will no longer use the proportionate penalties clause to judge a penalty in relation to the penalty for an offense with different elements." *Sharpe*, 216 Ill. 2d at 519.

- 11 -

One of "[t]hose cases that used such an analysis" was *People v. Davis*, 177 Ill. 2d 495 (1997). In fact, this court noted in *Sharpe* that *Davis* "established cross-comparison analysis in its current form." *Sharpe*, 216 Ill. 2d at 505. *Davis* was the principal case upon which this defendant relied. At the very outset of this case, the State advised the circuit court that *Davis* was no longer good law after *Sharpe*. It appears that the circuit court's analysis effectively resurrects the cross-comparison analysis under the guise of an inquiry into what is cruel and degrading. A penalty—or in this case the withdrawal of a dispositional option—does not become "cruel" and "degrading" simply because it differs from the penalty for a different offense with different elements. "Different" is not consonant with "degrading."[5]

¶ 43   The other error in the circuit court's analysis lies in its improper consideration of possible collateral consequences of a misdemeanor conviction, such as a requirement of disclosure on job or loan applications. Aside from the fact that an employer, for valid safety concerns, might want to know that a prospective employee has driven 40 miles per hour over the speed limit, we note that the collateral consequences of conviction, referenced by the circuit court, do not qualify as part of the "penalty" for purposes of proportionate penalty analysis. Both Illinois's proportionate penalties clause and the federal constitution's prohibition of cruel and unusual punishment "apply only to the criminal process involving a direct action by the government to inflict punishment." *People v. Boeckmann*, 238 Ill. 2d 1, 16-17 (2010). This court has held that the Illinois Secretary of State's suspension of driving privileges, when a person receives court supervision for unlawful consumption of alcohol under 21 years of age, "is not a direct action by the government to inflict punishment." *Id.* at 17. More to the point, this court has consistently held that the requirement of registration, pursuant to the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 2004)), is not a direct action by the State to inflict punishment. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 207-08 (2009). In light of those holdings, what reasoning or case law supports the conclusion that a *nongovernmental* actor's requirement of misdemeanor disclosure is properly considered as part of a pertinent "penalty" in this context? We are aware of none, and the circuit court cites none.

¶ 44   In sum, we find no basis for the circuit court's ruling that the prohibition of supervision, in the 2012 version of section 5-6-1(p) of the Unified Code, violates the proportionate penalty

---

[5]We acknowledge the contention of *amicus curiae* in this case—the Illinois Bar Association, the Illinois Association of Criminal Defense Lawyers Association, and the Du Page County Criminal Defense Lawyers Association—that "*Sharpe* does not require the Court to completely disregard the general penalties that the legislature has set for other acts of misconduct." We respond that the legislature has "generally" set consistent penalties for violations of section 11-601.5(b) and reckless driving, the principal offense with which defendant seeks comparison. They are both Class A misdemeanors. In *Sharpe*, we cautioned "that the cross-comparison challenge will not simply resurface as a due process challenge along the lines of [*People v. Wagner*, 89 Ill. 2d 308 (1982)]," where this court "made a subjective determination about the seriousness" of the two offenses there at issue. *Sharpe*, 216 Ill. 2d at 522-23. We reiterate that caution in this context, again quoting *Sharpe*: "[C]ourts generally decline to overrule legislative determinations in this area unless the challenged penalty is *clearly* in excess of the general constitutional limitations on this authority." (Emphasis added.) *Id.* at 487. "Different" simply does not translate into "cruel" or "degrading." There must be a disconnect between the gravity of defendant's offense and the severity of the statutorily mandated sentence that "shocks the moral sense" or is inconsistent with community "standard[s] of decency." See *Miller*, 202 Ill. 2d at 339.

clause. Although the circuit court purported to hold the statutory provision unconstitutional *only* on the basis of a proportionate penalty violation, in light of the court's imprecise approach in Rule 18 findings—stating that the ruling was based on "due process of law" and "equal protection of law" as well—its use of due process language in the body of its order, and defendant's contention that due process was also violated, we will briefly address due process concerns.

¶ 45    When legislation does not affect a fundamental constitutional right, this court, in a due process analysis, applies the rational basis test to determine the legislation's constitutionality. *People v. Wright*, 194 Ill. 2d 1, 24 (2000). A statute attacked on due process grounds will be upheld so long as (1) it bears a reasonable relationship to the public interest sought to be protected and (2) the means employed are a reasonable method of achieving the desired objective. *People v. Carpenter*, 228 Ill. 2d 250, 267-68 (2008). In order to "pass muster under the due process clause, a penalty must be reasonably designed to remedy the particular evil that the legislature was targeting." *Sharpe*, 216 Ill. 2d at 531. When applying the rational basis test, the court is highly deferential to the findings of the legislature. *People v. Johnson*, 225 Ill. 2d 573, 585 (2007). If any state of facts can reasonably be conceived of to justify the enactment, it must be upheld. *People v. Alcozer*, 241 Ill. 2d 248, 263 (2011); *People v. Shephard*, 152 Ill. 2d 489, 502 (1992).

¶ 46    In this instance, the legislature was addressing excessive speeding, which the circuit court acknowledged "has the potential of creating grave injury to the public." The legislature initially considered making speeding in excess of 40 miles per hour over the limit *prima facie* evidence of reckless driving, then changed course and made speeding in that range a stand-alone, Class A misdemeanor. The fact that the legislature saw fit to make aggravated speeding a separate offense, for which proof of a reckless mental state was not required, suggests the seriousness with which the legislature regarded this conduct. That it might put restrictions on the dispositional option of supervision, as is still the case even after the recent amendment of section 5-6-1, or prohibit it altogether, as was the case with the statutory version currently under consideration, is not an unreasonable or arbitrary means of addressing or deterring the perceived evil.

¶ 47    The circuit court expressed concern that the legislature failed to inform us "whether they were attempting to Prevent, Restrain, Rehabilitate, Deter, Educate or require Retribution." The legislature does not have to offer the judiciary an obligatory statement of purpose for every penal provision it passes.[6] If one were required, deterrence would suffice in this instance. The circuit court and the defendant have already given us examples of how a conviction in and of itself might have consequences that would deter this type of conduct. In short, we find no due process violation.

¶ 48    In closing, we wish to again emphasize that one who *challenges* the constitutionality of a statutorily mandated "penalty" has the burden of *clearly* establishing that the challenged provision is in excess of the general constitutional limitations on the legislature's authority. *Sharpe*, 216 Ill. 2d at 487. The challenger cannot shift the burden of proof and research to the circuit court—it is his burden alone to overcome the presumptions of unconstitutionality,

_____

[6]Moreover, in this context, where evidence of the legislature's deliberative process is minimal at best, we decline to "second-guess the legislature's judgment" and engage in a *Wagner*-style due process analysis that this court roundly criticized in *Sharpe*. See *Sharpe*, 216 Ill. 2d at 495-96.

- 13 -

which exist for a reason. For its part, a circuit court contemplating the invalidation of a law enacted by the representatives of the people should proceed with the utmost caution before following an attorney's ill-defined path to a finding of unconstitutionality. Rule 18 requires the court to set forth the specific grounds for the finding of unconstitutionality, including the constitutional provision(s) upon which the finding of unconstitutionality is based, and whether the law is being found unconstitutional on its face or as applied to the case *sub judice.* At a minimum, that should include an adequate discussion of relevant case law and should sufficiently differentiate the various constitutional bases that might bear upon its finding. That was not done here.

¶ 49      For the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

¶ 50      Reversed and remanded.

¶ 51      JUSTICE BURKE, specially concurring:

¶ 52      I agree that the judgment of the circuit court should be reversed. However, my reasons for reaching that result differ somewhat from the majority. I therefore specially concur.

¶ 53      The circuit court held that the 2012 version of the aggravated speeding statute violated the proportionate penalties clause of the Illinois Constitution because supervision was not a possible disposition for the offense. The difficulty with this conclusion is that proportionate penalties analysis rests on the *actual* penalties set by the legislature and whether those penalties are set according to the seriousness of the offense. The *absence* of supervision as a possible disposition is not, itself, a penalty. Thus, in this case, the only question that need be addressed is whether a mandatory misdemeanor penalty for the offense of aggravated speeding—the actual penalty imposed by the General Assembly—is so cruel, degrading or disproportionate to the offense that it shocks the moral sense of the community and thereby violates the proportionate penalty clause.

¶ 54      Driving 40 miles per hour over the speed limit is an inherently dangerous activity that puts the safety of other drivers at risk. It cannot reasonably be said that making the offense a mandatory misdemeanor is so cruel or degrading a punishment that the legislature is constitutionally precluded from imposing that penalty.

¶ 55      Also, in addressing this appeal, the majority is unnecessarily critical of the circuit court. The primary concern of the circuit court was that, by making aggravated speeding a mandatory criminal offense, the legislature barred the circuit courts from ever considering any mitigating circumstances that might accompany the violation. In other words, a judge could not consider granting supervision if, for example, the speeding was necessitated by a medical emergency of some kind. Notably, after the circuit court's decision in this case, the legislature amended the relevant statutes to make supervision generally available as a disposition for first offenders. See Pub. Act 99-212, § 5 (eff. Jan. 1, 2016) (amending 730 ILCS 5/5-6-1(p), (q) (West 2014)). Thus, the circuit court's concerns in this case were fully validated by the General Assembly.

¶ 56      For the foregoing reasons, I specially concur.

¶ 57      JUSTICE FREEMAN joins in this special concurrence.