2025 IL App (1st) 231938-U

No. 1-23-1938

Order filed June 3, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 1088 |
| | ) | |
| LEVOID OGLESBY-WILLIAMS, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for armed habitual criminal over his contentions that the evidence was insufficient and that the armed habitual criminal statute is facially unconstitutional.

¶ 2    Following a bench trial, defendant Levoid Oglesby-Williams was found guilty of one count of armed habitual criminal (AHC) and sentenced to six years in prison. On appeal, defendant contends that the State failed to establish his constructive possession of a firearm recovered from the floorboard of a vehicle in which he was a passenger. In the alternative, he contends that the

AHC statute is facially unconstitutional in violation of the Second Amendment under the framework established in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). We affirm.

¶ 3    Defendant was charged by indictment with multiple counts of AHC, aggravated unlawful use of a weapon, and unlawful use or possession of a weapon by a felon. The State proceeded on two counts of AHC predicated on possession of a .380-caliber firearm (count I) and a 9-millimeter firearm (count II).

¶ 4    Chicago police officer Jakub Cybul testified that, at approximately 5 a.m. on December 20, 2020, he and his partner responded to a dispatch which included the description of a vehicle. Upon arriving at the 3300 block of West Harrison Street, Cybul observed a vehicle matching the description fail to signal prior to making a right turn. Cybul curbed the vehicle and approached the driver's side. It was "fairly dark," so Cybul used a flashlight and the squad car's spotlight to aid him in seeing. An African-American woman, later identified as Yerica Nickelson, was in the vehicle's driver's seat and defendant was in the front passenger seat.

¶ 5    Cybul asked Nickelson to exit the vehicle. As she complied, a magazine fell to the street. Cybul detained Nickelson as his partner detained defendant. When Cybul went to the passenger side of the vehicle, he observed a firearm on the passenger side floorboard and one live round.

¶ 6    During cross-examination, trial counsel asked whether the firearm was "accessible to either occupant." Cybul replied that "it would be difficult for the driver to reach on to the passenger's floorboard, depends on the reach." He acknowledged that the arrest report he authored stated that the firearm on the passenger side of the vehicle was immediately accessible to both occupants.

¶ 7    Chicago police detective Daniel Jones testified that a .380-caliber Smith & Wesson semiautomatic pistol was recovered from the vehicle's front passenger side floorboard and a Smith & Wesson magazine was recovered from the street.

¶ 8    Chicago police officer Robert Keller testified that he executed a search warrant on the vehicle and recovered an unloaded 9-millimeter firearm and two magazines from the glove box.

¶ 9    The State entered a stipulation that the two firearms recovered from the vehicle were legally purchased by Nickelson. The State further related that the parties stipulated that "defendant has two qualifying felony offenses for the purposes of the armed habitual criminal statute." Trial counsel then clarified that the defense "stipulate[ed] as to the existence of those convictions" but would argue about "sufficiency" under the AHC statute.

¶ 10    The defense moved for a directed verdict, which the trial court denied.

¶ 11    Defendant entered a stipulation that, if called, a representative of the United States Department of Justice would testify that the National Tracing Center for the Bureau of Alcohol, Tobacco, Firearms, and Explosives traced the firearms and that both "came back as purchased" by Nickelson.

¶ 12    In closing, trial counsel argued that Nickelson owned and possessed the firearms, which were registered to her. Counsel noted that a magazine fell to the ground as Nickelson exited the vehicle and asked the court to take judicial notice of the fact that the court "gave Yerica Nickelson probation for that same 380, which she completed two days ago." Counsel next asserted that there was no evidence "whatsoever" that defendant had knowledge of the 9-millimeter firearm recovered from the glove box.

¶ 13    The trial court granted a directed finding as to AHC predicated on possession of the 9-millimeter firearm (count II).

¶ 14    In closing, counsel argued that the firearm recovered from the passenger floorboard was bought by, and registered to, Nickelson, Nickelson possessed a magazine, and that there was a "strong argument" that she threw the firearm to the floor when the vehicle was curbed. Counsel concluded that nothing, other than proximity, attributed the firearm to defendant. The State replied that the firearm was found at defendant's feet, where he could "literally bend over and grab it."

¶ 15    In finding defendant guilty of count I for AHC, the court noted that the firearm was on the floorboard, rather than under a seat or in a glove box, and that it did not matter who owned the firearm because defendant was charged with possessing it rather than owning it. The court concluded that defendant had immediate control of the area and knowledge of the firearm "on a floorboard right in front of him."

¶ 16    Defendant filed a motion and amended motion for a new trial, which the trial court denied. Following a hearing, the trial court sentenced defendant to six years in prison. Defendant filed a motion to reconsider sentence, which the court denied.

¶ 17    On appeal, defendant first contends that the State failed to establish his constructive possession of the firearm beyond a reasonable doubt. He argues that the firearm was on the floorboard of a vehicle he did not own and in which he was a passenger, and that Nickelson, the firearm's owner, had a magazine in her lap when the vehicle was curbed.

¶ 18    In reviewing the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People*

*v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard applies whether the evidence is direct or circumstantial and does not allow this court to substitute its judgment for that of the fact finder on issues involving witness credibility and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). This court will not retry a defendant, and on review, we must draw all reasonable inferences from the evidence in favor of the State. *People v. Jones*, 2023 IL 127810, ¶ 28.

¶ 19 In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, and drawing reasonable inferences therefrom. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). When weighing the evidence, a trier of fact is not required to disregard the inferences that flow naturally from that evidence; nor must it search for any possible explanation consistent with innocence and raise it to the level of reasonable doubt. *Jackson*, 232 Ill. 2d at 281. Ultimately, we reverse a defendant's conviction based upon insufficient evidence only when the evidence is so unreasonable, improbable, or unsatisfactory that there is reasonable doubt as to his guilt. *Jones*, 2023 IL 127810, ¶ 28.

¶ 20 To sustain a conviction for AHC as charged in count I, the State had to establish beyond a reasonable doubt that defendant knowingly or intentionally possessed the .380-caliber firearm after having been convicted of two qualifying offenses. See 720 ILCS 5/24-1.7(a) (West 2020). Here, defendant contends that the State failed to establish his constructive possession of the firearm.

¶ 21 Possession of a firearm may be actual or constructive. *Jones*, 2023 IL 127810, ¶ 30. To establish constructive possession, the State must prove that a defendant had knowledge of the contraband and exercised immediate and exclusive control over its location. *Id*.

¶ 22 A defendant's mere presence in a vehicle, without more, does not establish his knowledge of a weapon therein. *People v. Bailey*, 333 Ill. App. 3d 888, 891 (2002). Knowledge may be demonstrated by evidence of a defendant's acts, declarations, or conduct from which one could infer that he knew the contraband existed in the place it was found. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Specifically,

> "[k]nowledge could be inferred from several factors, including: (1) the visibility of the weapon from defendant's location in the vehicle, (2) the amount of time in which defendant had an opportunity to observe the weapon, (3) gestures or movements made by defendant that would suggest an effort to retrieve or conceal the weapon, and (4) the size of the weapon." *People v. Ingram*, 389 Ill. App. 3d 897, 900 (2009).

¶ 23 Control is established when a defendant has the capability and the intent to maintain dominion and control over the firearm. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. Proof that a defendant controlled the location where the firearm was supports an inference of his knowledge and possession of that weapon. *Jones*, 2023 IL 127810, ¶ 30. A defendant's proximity to contraband is another relevant factor when determining constructive possession. *People v. Wise*, 2021 IL 125392, ¶ 29.

¶ 24 Knowledge and possession are questions of fact. *People v. Loggins*, 2019 IL App (1st) 160482, ¶ 45. A trier of fact may rely on reasonable inferences of knowledge and possession, absent other factors that might raise a reasonable doubt of a defendant's guilt. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. Constructive possession is often proven through circumstantial evidence. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 22.

¶ 25    Viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have concluded that defendant constructively possessed the firearm.

¶ 26    Here, the firearm was recovered from the front passenger side floorboard and defendant was seated in the front passenger seat, within arm's reach. *Ingram*, 389 Ill. App. 3d at 898, 900 (defendant's proximity to firearm in vehicle supported constructive possession, although he did not own vehicle and there were other occupants); see also *People v. O'Neal*, 35 Ill. App. 3d 89, 91 (1975) ("Contraband will be considered to be sufficiently accessible to a defendant if it is within his easy reach and that of other persons who may be present."). Cybul acknowledged that it was "fairly dark" and that a flashlight and spotlight were used, but he did not testify that he had any difficulty seeing or identifying the firearm on the floorboard. Although the firearm was registered to Nickelson and she was in the vehicle, those facts were not fatal to the State's case, as joint access to contraband does not negate constructive possession. See *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27 (another person's access to the contraband does not diminish constructive possession); see also *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 43 (constructive possession can be established when there is joint possession or others have access to the area).

¶ 27    Nonetheless, defendant argues that no physical evidence linked him to the firearm, there was no testimony that he made any movements toward the firearm, and he made no statements regarding it. He posits that Nickelson, the firearm's owner, may have "tossed" it to the floor when the vehicle was curbed.

¶ 28    Contrary to defendant's position, Cybul's testimony placing defendant in the front passenger seat and describing the firearm's location on the front passenger seat floorboard sufficiently linked defendant to the firearm and established his constructive possession. See *People*

*v. Campbell*, 2019 IL App (1st) 161640, ¶ 33 ("if witnesses' testimony is otherwise credible, the State [is] not required to present additional physical evidence" linking the defendant to contraband (internal quotation marks omitted)). Moreover, the trial court, as the trier of fact, evaluated the evidence and apparently rejected defendant's alternative argument that Nickelson, the firearm's owner, solely possessed the firearm and may have discarded it when the vehicle was curbed. See *People v. Jacobs*, 2016 IL App (1st) 133881, ¶ 53 (a trier of fact is not "required to accept the defendant's version of the facts"). The trier of fact need not disregard inferences which flow normally from the evidence or seek all possible explanations consistent with innocence and raise them to the level of reasonable doubt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60.

¶ 29 In the case at bar, a rational trier of fact could have found defendant constructively possessed the firearm based upon Cybul's testimony that defendant was in the front passenger seat and that a firearm was observed on the front passenger floorboard within his reach. Ultimately, we reverse a defendant's conviction only when the evidence is so unreasonable, improbable, or unsatisfactory that reasonable doubt of his guilt remains (*Jones*, 2023 IL 127810, ¶ 28); this is not one of those cases. We therefore affirm defendant's conviction for AHC.

¶ 30 Defendant next contends, for the first time on appeal, that his AHC conviction facially violates the Second Amendment under *Bruen*.

¶ 31 A defendant raising a constitutional challenge to a statute carries the heavy burden to rebut the strong judicial presumption that the challenged statute is constitutional. *People v. Rizzo*, 2016 IL 118599, ¶ 23. To overcome this presumption, the defendant must clearly establish that the statute violates the constitution. *Id.* However, courts have a duty to uphold the constitutionality of

a statute whenever reasonably possible, resolving doubts in favor of its validity. *Id.* Whether a statute is constitutional is a matter of law that we review *de novo*. *Id.*

¶ 32    A constitutional challenge to a statute may be facial or as-applied. *Id.* ¶ 24. A facial challenge requires the challenging party to show that the statute is unconstitutional under any set of facts, whereas an as-applied challenge depends on the particular facts and circumstances of an individual case. *Id.* A defendant may challenge the facial constitutionality of a statute at any time. *People v. Thompson*, 2015 IL 118151, ¶ 32. A facially unconstitutional statute is void *ab initio*, meaning that "the statute was constitutionally infirm from the moment of its enactment and, therefore, unenforceable." *Id*. However, a defendant raising a facial challenge has a particularly heavy burden, as the fact that the statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. *Rizzo*, 2016 IL 118599, ¶ 24.

¶ 33    Pursuant to the Second Amendment, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

¶ 34    The United States Supreme Court has "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun" inside and outside the home "for self-defense." *Bruen*, 597 U.S. at 8-10. In *Bruen*, the Supreme Court announced a new analytical framework for evaluating the constitutionality of firearm regulations. First, courts must determine whether the Second Amendment plainly covers an individual's conduct. *Id*. at 24. If it does, "the Constitution presumptively protects that conduct," and the State has the burden to justify a regulation by showing it is consistent with our country's history of firearm regulation. *Id*.

¶ 35 This court has consistently rejected constitutional challenges to the AHC statute based upon the *Bruen* framework. See, *e.g.*, *People v. Gray*, 2025 IL App (1st) 191086-B, ¶¶ 16-23 (rejecting facial and as-applied challenges to the AHC statute); *People v. Daniels*, 2025 IL App (1st) 230823, ¶¶ 36-45 (rejecting an as-applied challenge to the AHC statute); *People v. Kelley,* 2024 IL App (1st) 230569, ¶¶ 8-22, 30 (rejecting facial challenge to the AHC statute); *People v. Travis*, 2024 IL App (3d) 230113, ¶¶ 20-37 (rejecting facial and as-applied challenges to the AHC statute); *People v. Brooks*, 2023 IL App (1st) 200435, ¶¶ 55-105 (rejecting an as-applied challenge to the AHC statute). We decline defendant's invitation to depart from these well-reasoned decisions.

¶ 36 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37 Affirmed.