2025 IL App (1st) 230823

No. 1-23-0823

Opinion filed February 7, 2025

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2021CR15243 |
| ELIJAH DANIELS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Thomas J. Byrne, |
| | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Tailor and Justice Gamrath concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Elijah Daniels appeals his conviction for being an armed habitual criminal

(AHC) (720 ILCS 5/24-1.7(a) (West 2022)). Defendant raises three issues in this appeal. He first

argues that the State did not prove beyond a reasonable doubt that he possessed a firearm. Second,

defendant argues his convictions cannot stand where the provisions of the aggravated unlawful use

of a weapon (AUUW) statute (*id.* § 24-1.6(a)), upon which the State relied, is unconstitutional and void *ab initio* under the second amendment (U.S. Const., amend. II) and the test for gun regulations set forth in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Finally, he contends that his conviction for AHC violates the second amendment under the *Bruen* test for gun regulations because there is no historical tradition of prohibiting individuals with prior nonviolent gun possession crimes, like him, from possessing firearms. For the following reasons, we affirm, finding that (1) the State presented sufficient evidence to support the conviction for armed habitual criminal, (2) defendant failed to rebut the constitutionality of the aggravated unlawful use of a weapon statute, and (3) he failed to establish that the armed habitual criminal statute violates the second amendment under the new test for gun regulations pursuant to *Bruen*.

¶ 2                                  I. BACKGROUND

¶ 3     On November 20, 2021, Chicago police responded to a report of a person with a gun near the 1400 block of East 70th Street. When the officers arrived near 1466 East 70th Street, they confronted defendant and codefendant Makhtar Diop, who then attempted to flee from the officers. After a brief pursuit, the officers arrested defendant and codefendant. Following the arrests, the officers found two firearms with extended magazines. Defendant was charged with one count of AHC, two counts of AUUW, and two counts of unlawful use or possession of weapons by a felon (720 ILCS 5/24-1.1(a) (West 2022)).

¶ 4     Defendant waived his right to a jury trial, and the circuit court held a bench trial on January 12, 2023.[1] On behalf of the State, Chicago Police Sergeant Eric Ruhnke testified that he, Officer Mark Sharks, and a third officer responded to the call of a person with a gun. Ruhnke dropped off

_____

[1]The circuit court held trial concurrently for the defendant and codefendant, who also waived his right to a jury. Codefendant is not a party to this appeal.

the third officer at a park near 1437 East 70th Street, before seeing defendant and codefendant rapidly crossing the street and looking to enter one of the houses in the area. As Ruhnke and Sharks exited the vehicle to confront them, defendant and codefendant fled on foot around the building. The officers pursued the defendants in a single-file line—codefendant ran in front of defendant, and Ruhnke ran in front of Sharks. Ruhnke testified that as the pursuit continued, he observed a firearm falling from defendant, but he did not see from which arm it fell. As Sharks continued pursuing the defendant and codefendant, Ruhnke recovered a loaded semiautomatic handgun with an extended magazine. Sharks apprehended codefendant, while the third officer apprehended defendant.

¶ 5    The State then introduced Ruhnke's body camera footage from the incident. The video footage showed the officers pursued the defendants as they ran single file around the side of a residence located at 1466-68 East 70th Street. As the defendants ran, they jumped over two sets of bushes—one in front of the residence and another behind it. As Ruhnke jumped over the first bush, the camera points down towards the ground until the defendants begin to jump over the second bush. The footage briefly shows a long, black "stick-like" object protruding from the left elbow of defendant as he jumped. When Ruhnke stopped to collect the gun, it was in the dirt outside of the second bush. On cross examination, Ruhnke admitted when he initially observed defendants, he did not see anything in their hands. He admitted that since they recovered two firearms during the pursuit, he was functioning on the working principle that both defendants were armed.

¶ 6    Next, the State called Sharks, who testified that both defendants dropped firearms during the pursuit, yet he only saw a firearm fall from the leg of codefendant. The State then introduced Sharks's body camera footage from the incident. The footage showed when the pursuit began, Sharks ran behind Ruhnke, who obscured his view of the defendants as they ran over the second

3

bush. As Ruhnke stopped to recover the firearm, defendant continued to run straight until he was out of Sharks's sight. Sharks then turned around and rejoined Ruhnke in pursuing codefendant, who ran around a set of trees to the right of the second bush back towards where the chase began. Sharks overtook Ruhnke and caught up to codefendant after he tripped and fell. As Sharks approached codefendant on the ground, he recovered a firearm that was pinned under the left leg of codefendant.

¶ 7    The parties stipulated that, on the date of the arrest, defendant did not possess a Firearm Owners Identification (FOID) Card or a Concealed Carry License (CCL). In addition, the parties further stipulated that defendant had two prior AUUW convictions from when he was under the age of 21—one in 2019 and another in May 2021. The court found defendant guilty on all charges. In its finding, the court relied on Ruhnke's testimony even though he testified he did not see exactly from where the gun fell.

¶ 8    The court noted that Ruhnke was closest to defendant, and his testimony demonstrates the gun was in possession of defendant before it fell during the course of the chase. The court stated:

"There is no requirement that in that blurry frame that is still in front [of] me that I need to see a gun dropping as long as there's testimony, credible testimony, that demonstrates beyond a reasonable doubt that a gun was in possession of [defendant] and was — came from his body where it landed during the course of the chase in the location where Sergeant Ruhnke stopped and recovered."

¶ 9    Defendant filed a motion to reconsider on February 23, 2023. On March 30, 2023, the court denied the motion and sentenced defendant to six years in prison. The court further merged all other charges into his charge for AHC. This appeal followed.

¶ 10                                    II. JURISDICTION

¶ 11    The circuit court of Cook County denied defendant's motion to reconsider his January 12, 2023, conviction and sentenced him on March 30, 2023. Defendant filed his timely notice of appeal on April 25, 2023. This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const., 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. Mar. 12, 2021).

¶ 12                                    III. ANALYSIS

¶ 13    Defendant makes three arguments. First, he claims the State failed to prove beyond a reasonable doubt that he possessed a firearm on the date of the arrest. Second, defendant challenges the constitutionality of the AUUW statute as void *ab initio* under the second amendment, pursuant to *Bruen*. Third, he contends that the AHC statute violates the second amendment under the new test for gun regulations set forth in *Bruen*. We address each argument below.

¶ 14                            A. Sufficiency of Evidence

¶ 15    Defendant asserts that the State did not prove beyond a reasonable doubt he possessed a firearm on the date of the arrest. He notes while Ruhnke testified he saw a weapon come from his person, Ruhnke admitted on cross-examination he never saw defendant hold a gun or have a bulge in his pants. In addition, Ruhnke could not testify exactly from where the gun fell, even though his body camera footage showed him closest to defendant. While Sharks testified that he saw both defendants discard firearms, he further explained that he only saw a firearm fall from codefendant's leg. Ruhnke and Sharks's body camera footage showed both defendants ran in a single-file line, with codefendant in front of defendant. Neither officers' body camera footage shows a firearm leaving defendant's person. Defendant contends because Ruhnke's testimony is

contradicted by both his admissions on cross-examination and the body camera footage, the evidence was insufficient to prove he possessed a firearm.

¶ 16    It is a fundamental doctrine of our system of criminal justice that the law presumes a defendant to be innocent until he is proven guilty beyond a reasonable doubt. *People v. Weinstein*, 35 Ill. 2d 467, 469-70 (1966). It is the State's burden to prove beyond a reasonable doubt all material and essential facts constituting the crime and remains their responsibility throughout the trial. *People v. Phillips*, 127 Ill. 2d 499, 527 (1989). The burden of proof includes the burden of producing evidence and persuading the trier of fact. *People v. Abadia*, 328 Ill. App. 3d 669, 679 (2001). There must be some evidence giving rise to a reasonable inference of the defendant's guilt; the State may not leave to conjecture or assumption essential elements of the crime. *People v. Smith*, 2014 IL App (1st) 123094, ¶ 15.

¶ 17    When a criminal conviction is challenged based on the sufficiency of evidence, a reviewing court, considering all of the evidence in the light most favorable to the State, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. *People v. Murray*, 2019 IL 123289, ¶ 19. This standard " 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In reviewing the evidence, a reviewing court will not retry the defendant, nor substitute its judgment for that of the trier of fact unless the finding is against the manifest weight of the evidence. *Id.* A reviewing court will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Jones*, 2023 IL 127810, ¶ 28.

¶ 18    A defendant commits AHC if he possesses any firearm after having been convicted a total of two or more times of a combination of certain offenses, including AUUW. 720 ILCS 5/24-1.7(a)(2) (West 2022). Here, the parties stipulated that defendant had two prior AUUW convictions at the time of the arrest. The parties further stipulated that these convictions were qualifying offenses under the AHC statute. The only issue is whether the State met their burden to show defendant possessed a firearm. *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000) ("The fact of possession must be shown beyond a reasonable doubt.").

¶ 19    For purposes of the AHC statute, possession can be established by evidence of actual or constructive possession. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 27. Actual possession is proved by testimony that the defendant exercised some form of dominion over the firearm, such as that he had it on his person, tried to conceal it, or was seen to discard it. *Id.* The State must prove the defendant exercised immediate and exclusive dominion or control over the firearm, but it is not required to show personal touching of the firearm. *People v. Balark*, 2019 IL App (1st) 171626, ¶ 94.

¶ 20    Defendant asserts that Ruhnke's admissions during cross examination, along with the officers' body camera footage, contradicts his testimony that he saw a firearm fall from his body. The testimony of a single witness, if it is positive and the witness credible, is sufficient to convict. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). It is the trier of fact's responsibility to determine the witness's credibility; while their determinations are entitled to deference, they are not conclusive. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). Where findings of fact depend on the credibility of witnesses, a reviewing court will defer to the findings of the trial court unless they are against the manifest weight of the evidence. *People v. Clark*, 2014 IL App (1st) 130222, ¶ 26. A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when

the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Id.* A reviewing court will reverse a conviction based on eyewitness testimony where that testimony is " 'improbable, unconvincing or contrary to human experience.' " *People v. Shaw*, 2015 IL App (1st) 123157, ¶ 20 (quoting *Ortiz*, 196 Ill. 2d at 267).

¶ 21    Here, the circuit court found Ruhnke's testimony credible. On direct examination, Ruhnke testified that, as he chased defendant and codefendant, defendant "dropped a firearm to the ground, which [he] saw as it happened." He continued that, as he moved around the first bush, he was trying to keep up with the defendants, and while he did not see from which arm he dropped the firearm, he "saw it fall from his person to the [second] bush." During cross examination, Ruhnke testified defendant's back obscured which hand the firearm was in, but stated "as the body camera footage shows, [he] observed it fly." The State relied wholly on the testimony of Ruhnke to show defendant discarded a firearm during the pursuit and, thus, was in actual possession. The court acknowledges that Ruhnke admitted he did not see from where the gun fell and that the body camera footage does not show a firearm falling from defendant. The court concluded, however, that as defendant ran, he either discarded the gun intentionally or it dislodged from his person as he ran over the bushes. Because the court admitted the body camera footage did not show a firearm falling, it relied solely on Ruhnke's testimony to ultimately find defendant had possession.

¶ 22    Ruhnke's body camera footage shows that during his pursuit, he discovered a firearm laying still on the corner of a walkway between the back of the residence and a parking lot. More specifically, the firearm laid in a muddy patch of dirt in front of the second bush. The second bush and patch of dirt extended from the back of the residence to a walkway that led to a parking lot shared with a series of homes on the 6950 block of South Harper Avenue. To conclude defendant discarded the firearm from one of his hands, the fact finder would need to infer that defendant

retrieved the firearm from his chest, as that portion of his body was obscured by his back, and the firearm would fall away from him in the direction of where his arms moved. To conclude the firearm otherwise dislodged from defendant, the fact finder would need to infer the weapon landed close to the space where defendant jumped over the second bush, as the weapon would fall downward from where it dislodged.

¶ 23   Ruhnke's footage shows defendant begin his jump near the front of the second bush, a few feet away from where Ruhnke would discover the firearm. As defendant begins his jump, a long, black "stick-like" object protrudes downward from his left elbow, which is pointing upward. At the height of his jump, the right hand of defendant is falling back behind him empty, while his left hand is obscured in front of his chest. When defendant began his jump, his left elbow is over the patch of dirt in front of the second bush.

¶ 24 Contrary to defendant's assertion, Ruhnke's body camera footage corroborates his testimony, rather than contradicts it. After review of the footage, a rational fact finder could infer that the "stick-like" object protruding from defendant's left elbow was the extended magazine found on the recovered firearm. Because the defendant's left elbow was over the dirt patch a few feet away from where Ruhnke would recover the firearm, a fact finder could infer that as the defendant jumped over the second bush, the firearm fell from him, following the direction of his left hand. The circuit court's finding that defendant possessed a firearm was not against the manifest weight of the evidence. Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.

¶ 25                    B. Constitutionality of the AUUW Statute

¶ 26    Defendant next raises constitutional challenges to the AUUW statute. Relying on the ruling

of the United States Supreme Court in *Bruen*, defendant challenges the constitutionality of the

FOID and CCL provisions in the AUUW statute, both on its face and as applied to him in his

qualifying convictions when he was under the age of 21. Defendant contends the court in *Bruen*

reset the framework for evaluating firearm regulations, requiring the court to reevaluate prior

jurisprudence regarding age-based restrictions. He asserts that *Bruen* affirms the second

amendment rights for adults under the age of 21 to possess a firearm outside of the home. He

argues this court must vacate his qualifying convictions as the State cannot show a founding-era

historical tradition of regulating the ability of adults under 21 from exercising their rights via the

FOID and CCL provisions.

¶ 27    A person raising a constitutional challenge to a statute carries the heavy burden of rebutting

the strong judicial presumption that statutes are constitutional and must clearly establish that the

statute violates the constitution. *People v. Rizzo*, 2016 IL 118599, ¶ 23. Courts have a duty to

uphold the constitutionality of a statute whenever reasonably possible, resolving any doubts in

favor of validity. *Id.* A constitutional challenge to a statute may be either facial or as applied.

*People v. Burns*, 2024 IL App (4th) 230428, ¶ 11. Whether a statute violates the constitution of

the United States or Illinois is a question of law, which we review *de novo*. *People v. Plank*, 2018

IL 122202, ¶ 10.

¶ 28    Defendant claims the AUUW statute, specifically subsections (a)(1), (a)(3)(A-5), and

(a)(3)(C) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C) (West 2022)), are both facially

unconstitutional and unconstitutional as applied to him. A person commits AUUW when the

person knowingly carries a loaded handgun and has not been issued a currently valid CCL under

the Firearm Concealed Carry Act (430 ILCS 66/1 *et seq.* (West 2022) or a currently valid FOID card. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C) (West 2022). Defendant contends that the CCL and FOID provisions in the AUUW statute violate the second amendment as the requirements to obtain a CCL or FOID card prohibit or severely restrict adults under 21 from exercising their rights to bear arms outside of the home. He notes that to acquire a CCL under the Firearm Concealed Carry Act, a person must be at least over 21 years old and have a valid FOID card. 430 ILCS 66/25(1)-(2) (West 2022). Furthermore, as stated in the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/4(a)(2)(i) (West 2022)), adults under 21are prohibited from obtaining a FOID card without the written consent of a parent or legal guardian who is permitted to obtain a FOID card. Defendant asserts these statutes together create a licensing scheme that prohibits adults under 21 from exercising their second amendment rights.

¶ 29    While facial and as-applied constitutional challenges are both intended to address institutional infirmities, they are not interchangeable. *People v. Thompson*, 2015 IL 118151, ¶ 36. A facial challenge requires the party to show the statute is unconstitutional under any set of facts, rendering the specific facts related to the party irrelevant. *Id.* A party may raise a facial challenge at any time. *Id.* ¶ 32. The burden on the challenger is particularly heavy when presenting a facial constitutional challenge. *Rizzo*, 2016 IL 118599, ¶ 24. So long as there exists a situation in which the statute could be validly applied, a facial challenge must fail. *Id.* Conversely, an as-applied challenger has the burden of showing that a constitutional violation arises from the application of the statute to a specific set of facts and circumstances. *People v. Harris*, 2018 IL 121932, ¶ 38. Ordinarily, a defendant must present an as-applied constitutional challenge at trial to develop the record as it pertains to the specific facts and circumstances of his claim. *People v. Brooks*, 2023

IL App (1st) 200435, ¶ 57. Where all the facts and circumstances to decide the claim are already in the record, the as-applied challenge may be raised for the first time on appeal. *Id.*

¶ 30    Here, as to the facial challenge, the *Bruen* Court explicitly stated that their analysis should not be interpreted to suggest the unconstitutionality of a "shall-issue" license regime, which do not necessarily prevent " 'law-abiding, responsible citizens' " from exercising their second amendment right to public carry. *Bruen*, 597 U.S. at 38 n.9 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). Illinois's firearm regulation regime operates as a "shall-issue" jurisdiction, as the Illinois State Police shall issue a FOID card or CCL to any applicant who meets the respective statutory criteria. *People v. Hatcher*, 2024 IL App (1st) 220455, ¶ 61. This court has held under *Bruen* that the FOID Card Act and Firearm Concealed Carry Act were not facially unconstitutional and found the same for subsections (a)(3)(A-5) and (a)(3)(C) of the AUUW statute. *Id.* Hence, the facial challenge here fails, as the licensing scheme of the Firearm Concealed Carry Act and FOID Card Act do not impugn the Supreme Court's ruling in *Bruen*.

¶ 31    Defendant further asserts that *Bruen* called into question the decision of the Illinois Supreme Court in *People v. Mosley*, 2015 IL 115872, which upheld provisions of the AUUW statute prohibiting adults under 21 from possessing firearms. However, this court explained the reasoning of our supreme court in *Mosley* was consistent with the plain text and historical analysis that *Bruen* requires. *People v. Thompson*, 2024 IL App (1st) 221031, ¶ 35 (citing *Hatcher*, 2024 IL App (1st) 220455, ¶ 58). Our supreme court " 'answered the second step' of the *Bruen* framework" and explicitly addressed the historical roots of age-based restrictions on the right to keep and bear arms to determine the age-based restrictions were historically rooted. *Id.* (quoting *In re D.B.*, 2023 IL App (1st) 231146-U, ¶¶ 31, 34)). As previously stated, the facial challenge is without merit.

¶ 32    With respect to the as-applied challenge, while defendant raises this challenge for the first time on appeal, the facts and circumstances needed to decide his claim—his age and criminal history—are already in the record. The record shows defendant was convicted of AUUW twice, both in 2019 and May 2021. Defendant was under the age of 21 at the time of these convictions. Because defendant's age at the time of his qualifying convictions is already established in the record, his as-applied challenge is reviewable on appeal. *People v. Martin*, 2018 IL App (1st) 152249, ¶¶ 12-13.

¶ 33    Defendant's as-applied challenge to the AUUW statute is without merit for two reasons. First, defendant asserts that, under *Bruen*, the FOID and CCL provisions of the AUUW statute unconstitutionally criminalizes adults under 21 from possessing a loaded handgun outside the home. Yet as discussed above, our supreme court determined age-based restrictions in the AUUW statute were historically rooted. *Thompson*, 2024 IL App (1st) 221031, ¶ 35. As such, defendant's first qualifying conviction for AUUW was constitutionally valid.

¶ 34    Second, at the time of his second qualifying conviction, his felon status removed him from the scope of the *Bruen* test. This court has previously found that *Bruen* strongly suggests its test only applies to laws that attempt to regulate the gun possession of law-abiding citizens and not felons. *People v. Baker*, 2023 IL App (1st) 220328; *People v. Mobley*, 2023 IL App (1st) 221264, ¶ 27. The record shows defendant was a convicted felon in May 2021. At the time of his arrest, he possessed a firearm as a convicted felon, and not just as an adult under the age of 21. As such, he cannot show that his conduct was presumptively protected by the second amendment, and therefore he does not fall within the scope of *Bruen*. *Burns*, 2024 IL App (4th) 230428, ¶ 21. We do not find the specific facts in the qualifying convictions establish that subsections (a)(1), (a)(3)(A-5), and (a)(3)(C) of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C)

(West 2022)) are unconstitutional as applied to defendant. Accordingly, the challenges fail both facially and as applied to defendant.

¶ 35                    C. Constitutionality of the AHC Statute

¶ 36    Defendant further relies on *Bruen* to challenge the constitutionality of the AHC statute as applied to individuals with prior nonviolent gun possession convictions such as himself. He contends that, under *Bruen*, the second amendment covers his possessing a firearm out of the home and that, regardless of his prior nonviolent convictions, he is part of "the people" covered by its plain text. Defendant maintains the State cannot show subsection (a) of the AHC statute is consistent with the nation's historical tradition of gun regulation.

¶ 37    Here, the parties stipulated at trial that defendant's AUUW convictions in 2019 and May 2021 served as qualifying offenses under the AHC statute. As stated above, a defendant commits AHC if he possesses any firearm after having been convicted a total of two or more times of a combination of certain offenses, including AUUW.

¶ 38    The second amendment states in relevant part: "[T]he right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. The *Bruen* Court announced a two-pronged test where if an individual's conduct is covered by the plain text of the second amendment, the State must demonstrate its regulation is consistent with the nation's historic tradition of firearm regulation. *Bruen*, 597 U.S. at 24. In *Bruen*, the Court rejected the prior two-step approach courts used to review firearm regulation following its rulings in *Heller*, 554 U.S. 570, and *McDonald v. City of Chicago*, 561 U.S. 742 (2010). *Bruen*, 597 U.S. at 19. The *Heller* Court held that the second amendment right "belongs to all Americans." *Heller*, 554 U.S. at 581. *Bruen* does not address this holding, and neither do we here. Regardless of his prior convictions, defendant is part of "the

people" covered by the second amendment; however, *Bruen* requires us to review the conduct covered by the second amendment rather than the individuals themselves.

¶ 39    The *Bruen* Court stated the test applied only to laws that attempted to regulate the gun possession of " 'law-abiding citizens.' " *Baker*, 2023 IL App (1st) 220328, ¶ 37 (quoting *Bruen*, 597 U.S. at 71). In *Bruen*, the behavior restricted by New York's firearm licensing regime was that of "law-abiding, adult citizens" possessing a firearm. *Bruen*, 597 U.S. at 15. While the *Bruen* Court clarified its prior guidance in *Heller* and *McDonald*, it reaffirmed that those cases sought to address regulations that burden "a law-abiding citizen's right to armed self-defense." *Id.* at 29. Defendant's attempt to narrow the scope of the behavior covered to just possession ignores the plain language of the *Bruen* majority, who repeated the phrase "law-abiding" nearly 20 times. *Baker*, 2023 IL App (1st) 220328, ¶ 37. The plain, clear, and repeated language of the justices in the majority informs us that felons are outside the box drawn by *Bruen*. *Id.* The explicit holding of *Bruen* applies to "law-abiding" citizens, and we presume the court's inclusion of that phrase in its holding is not superfluous or irrelevant, especially given its repeated use. *People v. Kelley*, 2024 IL App (1st) 230569, ¶ 16. We find under the first prong of the *Bruen* test, that the second amendment does not presumptively cover a felon's possession of a firearm.

¶ 40    Even if this court accepted defendant's argument that as a felon his conduct is covered under the first prong of the *Bruen* test, there is founding-era historical record to support the ability of the State to regulate gun possession against felons. *Brooks*, 2023 IL App (1st) 200435, ¶ 100; *People v. Travis*, 2024 IL App (3d) 230113, ¶ 32. Defendant points to *Brooks*, where a different panel of this court found a defendant's felon status was irrelevant for purposes of the first prong of the *Bruen* test. *Brooks*, 2023 IL App (1st) 200435, ¶ 89. He asserts, however, that the laws relied upon by the court in *Brooks* do not support its holding that the AHC statute was consistent with

the nation's historical tradition of firearm regulation. In response, the State asserts defendant misconstrues *Brooks*, arguing the court correctly noted the legislatures of the time of the founding enacted bans on groups when their status showed they were not law-abiding citizens.

¶ 41   In performing the historical analysis required by the second prong of the *Bruen* test, courts are required to use analogical reasoning to determine whether regulations from the nation's founding are " 'relevantly similar' " to the current regulation on review. *Bruen*, 597 U.S. at 28-29. Courts are only required to identify a "well-established and representative historical analogue," and not a historical twin. (Emphasis omitted.) *Id.* at 30. Even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster. *Id.* Why and how the modern regulation burdens the second amendment right is central to a court's inquiry. *United States v. Rahimi*, 602 U.S. 680, 692 (2024). For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations. *Id.*

¶ 42   In *Brooks*, the court looked back to regulations of firearms in England, where the government disarmed individuals whose conduct reflected that they could not be trusted to abide by the sovereign and his dictates. *Brooks*, 2023 IL App (1st) 200435, ¶ 93. This tradition extended into colonial America, where legislatures would disarm individuals whose status indicated that they could not be trusted to obey the law. *Id.* ¶ 94. The court found the legal tradition of the founding era was analogous to the AHC statute, as there was a "historical tradition" of imposing status-based restrictions on those who, based on their past conduct, were presumed unwilling to obey the law, and the founders understood that those restrictions could be imposed on felons. *Id.* ¶ 97.

¶ 43    Defendant claims the laws at the time of the founding were dissimilar in purpose, as some of the laws in place at the time disarmed certain minority groups, such as Catholics and Native Americans. As such, he asserts that the *Brooks* court incorrectly found them relevantly similar to the AHC statute, as those laws were not enacted to disarm felons. The court, however, noted additional laws from the colonial era that disarmed felons, including for nonviolent crimes such as deceit, forgery, or hunting in prohibited areas. *Id.* ¶ 96. We agree with the historical analysis of the *Brooks* court that subsection (a) of the AHC statute is relevantly similar to firearm regulations at the time of the nation's founding that sought to disarm individuals based on their past conduct. We find defendant's constitutional challenge to subsection (a) of the AHC statute fails as applied to him.

¶ 44    We note the deluge of cases interpreting *Bruen* and utilizing a divergent framework than the one this court established in *Baker*. Those cases have analyzed the substance of felon bans, using the *Bruen* test, and have applied and upheld those bans to nonviolent offenders. Our courts have analogized the nation's historical tradition of regulating firearm possessions based on a person belonging to a group the government deemed dangerous. This approach incorrectly broadens the scope of the approach in *Brooks*, which stated the tradition was disarmament of persons "based on their past conduct." *Id.* ¶ 97. In a similar fashion, the AHC statute seeks to regulate possession of firearms by persons based on their past conduct—conviction of certain felonies.

¶ 45    Laws from the founding era that disarmed an individual based on minority status are not relevantly similar to support the constitutionality of subsection (a). Such laws were firmly rooted in racism, racial prejudice, bias, and discrimination and certainly would not pass constitutional muster today. See, *e.g.*, *United States v. Rowson*, 652 F. Supp. 3d 436, 466 (S.D.N.Y. 2023) ("It

goes without saying that, in our modern era, a law that would disarm a group based on race, nationality, or political point of view—or on the assumption that these characteristics bespoke heightened dangerousness—would be anathema, and clearly unconstitutional. [Citation.] But the Second Amendment's inquiry into historical analogues is not a normative one. Viewing these laws in combination, the above historical laws bespeak a 'public understanding of the [Second Amendment] right' in the period leading up to 1791 as permitting the denial of access to firearms to categories of persons based on their perceived dangerousness."); see also *United States v. Jackson*, 69 F.4th 495, 504 (8th Cir. 2023), *vacated by United States v. Jackson*, No. 22-870, 2024 WL 3768055 (8th Cir. Aug. 8, 2024) (acknowledging that the historical record suggested that, "Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed," which encompassed historical firearm bans for Native Americans and Catholics, and which had analogical value in applying *Bruen*'s second prong). Analogizing modern regulations to laws rooted in a tradition of discrimination based on minority status is not a tenable form of jurisprudence, but *Bruen* has been interpreted to require it, and this unacceptable regime is likely to persist until the Supreme Court rectifies the current state of the law.

¶ 46                                    IV. CONCLUSION

¶ 47    For the foregoing reasons, the decision of the circuit court is affirmed.

¶ 48    Affirmed.

*People v. Daniels*, 2025 IL App (1st) 230823

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2021-CR-15243; the Hon. Thomas J. Byrne, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Brooke A. Winterhalter, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Noah Montague, and Margaret A. Hillmann, Assistant State's Attorneys, of counsel), for the People. |