2026 IL App (2d) 240341-U
No. 2-24-0341
Order filed February 9, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 01-CF-2800 |
| | ) | |
| STEVEN T. JORDAN, | ) | Honorable |
| | ) | William G. Engerman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy concurred in the judgment.
Justice McLaren specially concurred.

**ORDER**

¶ 1     *Held*:  The unlawful use of a weapon by a felon statute is not unconstitutional under the second amendment.

¶ 2     Defendant, Steven T. Jordan, appeals the order of the trial court vacating his conviction for aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1) (West 2000)) and reinstating his conviction for unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2000)).  Defendant appeals, arguing that the UUWF statute violates the second amendment

under *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    In 2002, following a bench trial, defendant was convicted of AUUW and UUWF after Aurora police officers found a handgun inside a vehicle defendant occupied. The trial court merged the convictions and sentenced defendant to six and a half years in prison on the AUUW conviction.

¶ 5    In 2023, defendant filed a *pro se* petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2022)) to set aside his AUUW conviction and sentence as void under *People v. Aguilar*, 2013 IL 112116, ¶ 22 and *People v. Burns*, 2015 IL 117387, ¶ 32. The State conceded that our supreme court determined that the AUUW statute was facially unconstitutional under the second amendment. However, the State asked the trial court to reinstate the previously merged UUWF conviction. The trial court agreed with the State, vacated defendant's AUUW conviction, and reinstated his UUWF conviction. It sentenced defendant to 36 months imprisonment with credit for time served on the AUUW conviction. Defendant timely appealed.

¶ 6                                II. ANALYSIS

¶ 7    Defendant's sole argument on appeal is that the UUWF statute is facially unconstitutional under the second amendment. Though defendant raises his constitutional challenge for the first time on appeal, a facial constitutional challenge to a criminal statute may generally be raised at any time. *People v. Thompson*, 2015 IL 118151, ¶ 32. "A facial challenge to the constitutionality of a statute is the most difficult challenge to mount." *People v. Davis*, 2014 IL 115595, ¶ 25. "A statute is presumed constitutional, and the party challenging the statute bears the burden of

demonstrating its invalidity." *People v. Graves*, 207 Ill. 2d 478, 504 (2003). A statute will be deemed facially unconstitutional "only if there are no circumstances in which the statute could be validly applied." *Davis*, 2014 IL 115595, ¶ 25. "We have a duty to construe the statute in a manner that upholds the statute's validity and constitutionality, if it can reasonably be done." *People v. Hollins*, 2012 IL 112754, ¶ 13. The constitutionality of a statute is a question of law, which we review *de novo*. *Id.*

¶ 8 The second amendment states: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. The version of the UUWF statute under which defendant was convicted stated:

> "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction. This Section shall not apply if the person has been granted relief by the Director of the Department of State Police under Section 10 of the Firearm Owners Identification Card Act." 720 ILCS 5/24-1.1(a) (West 2000).

¶ 9 In *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), the United States Supreme Court determined that laws banning the possession of handguns in the home and requiring other types of firearms to be kept unloaded and disassembled or bound by a trigger lock violated "the right of *law-abiding*, *responsible citizens* to use arms in defense of hearth and home." (Emphasis added.) The Court made clear that "the right secured by the Second Amendment is not unlimited" and that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill ***." *Id.* at 626.

¶ 10    In *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010), the Supreme Court held that the second amendment applies to the individual states through the fourteenth amendment. In doing so, it again found laws similar to those at issue in *Heller* violated the second amendment's protection of the right to keep and bear arms. *Id.* at 750. The Court reiterated that it made "clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill' \*\*\*. [Citation.] We repeat those assurances here." *Id.* at 786.

¶ 11    In *Bruen* the Supreme Court held that, consistent with *Heller* and *McDonald*, ordinary, law-abiding citizens have a right to carry a handgun for self-defense outside the home under the second and fourteenth amendments. 597 U.S. at 10. In so holding, the Court adopted the following test:

> "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Id.* at 24 (quoting *Konigsberg v. State Bar of California*, 366 U.S. 36, 50 n.10 (1961)).

Accordingly, under *Bruen* a court first asks whether the second amendment's plain text covers an individual's conduct. *Id.* If the conduct is protected, then the court asks whether the challenged statute is "consistent with this Nation's historical tradition of firearm regulation." *Id.*

¶ 12 Lastly, in *United States v. Rahimi*, 602 U.S. 680, 699 (2024), the Supreme Court reaffirmed the *Bruen* test and clarified that "*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home." Indeed, the Court noted that "*Heller* stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' " *Id.* (quoting *Heller*, 554 U.S. at 626, 627 n.26). The Court therefore rejected a challenge to a federal statute prohibiting firearm possession by a person subject to a domestic violence restraining order, determining that our nation's "tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at 700.

¶ 13 "In the wake of *Bruen*, the Illinois Appellate Court has routinely rejected facial constitutional challenges to statutes prohibiting felons from possessing firearms on the ground that felons are not within the class of individuals protected by the second amendment." *People v. Tapia*, 2026 IL App (2d) 240721-U, ¶ 50[1]. For example, this court has repeatedly held that the unlawful possession of a weapon by a felon and armed habitual criminal statutes do not violate the second amendment under *Bruen* because felons are not protected by the plain text of the second amendment. See *id.*; *People v. Martinez*, 2024 IL App (2d) 230305-U, ¶¶ 30-34; *People v. Gross*, 2024 IL App (2d) 230017-U. ¶ 29; *People v. Echols*, 2024 IL App (2d) 220281-U, ¶ 153; *People v. Smith*, 2023 IL App (2d) 220340-U, ¶ 57. Those cases reasoned that the Supreme Court in *Heller*, *McDonald*, and *Bruen* made clear that "the people" referenced in the second amendment are "law-abiding citizens." See, *e.g.*, *Echols*, 2024 IL App (2d) 220281-U, ¶ 153. Numerous other

---

[1] This court may rely on the reasoning in a nonprecedential decision under Illinois Supreme Court Rule 23 (eff. June 3, 2025). *Zhao v. State Farm Fire & Casualty Co.*, 2025 IL App (2d) 240713, ¶ 30; *People v. Ingram*, 2020 IL App (2d) 180353, ¶ 21 n.1.

districts of the appellate court have similarly held that convicted felons are not protected by the second amendment. See, *e.g.*, *People v. Smith*, 2025 IL App (5th) 230656, ¶ 25 ("we agree with the State and find better reasoned the federal and appellate court decisions holding or suggesting that felons are not protected under the plain text of the second amendment"); *People v. Welch*, 2025 IL App (1st) 231116, ¶ 57 (collecting cases and noting that the appellate court has "repeatedly held that statutes prohibiting a felon from possess[ing] firearms generally fall outside the scope of the second amendment"); *People v. Burns*, 2024 IL App (4th) 230428, ¶ 19 ("*Bruen* did nothing to contradict the Court's prior determinations [in *Heller* and *McDonald*] that the second amendment protects the rights only of law-abiding citizens to bear arms and that states may prohibit the possession of firearms by felons"); *People v. Baker*, 2023 IL App (1st) 230328, ¶ 37 ("The *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant"); see also *Tapia*, 2026 IL App (2d) 240721-U, ¶¶ 50, 53 (collecting cases that rejected the argument that a felon's possession of a firearm is protected by the second amendment). We agree with the reasoning of these cases that "the people" referenced in the second amendment does not include convicted felons.

¶ 14   Nevertheless, even if we assume that a felon's possession of a firearm is protected by the second amendment, there are historical analogues supporting the disarming of felons under the second step of *Bruen*. The First District in *Brooks*, 2023 IL App (1st) 200435, held that the armed habitual criminal statute was constitutional under the second amendment and discussed the historical analogues supporting the disarming of felons at length:

> "Restrictions on the possession of firearms date back to England in the 1600s when the government repeatedly disarmed individuals whose conduct reflected that they could

not be trusted to abide by 'the sovereign and [his] dictates.' [Citation.] The English Bill of Rights established that Parliament had the authority to determine which citizens could 'have arms *** by Law.' [Citation.] The Parliament first disarmed non-Anglican Protestants who refused to participate in the Church of England and those who were 'dangerous to the Peace of the Kingdom.' [Citation.] It later forbade firearm ownership by Catholics who refused to renounce their faith. [Citation.]

In colonial America, legislatures continued to disarm individuals whose status indicated that they could not be trusted to obey the law. As such, Native Americans, and other minority groups, like Catholics in Maryland and Pennsylvania were banned from owning firearms. [Citation.] Similarly, during the Revolutionary War, the Continental Congress, Massachusetts, Virginia, Pennsylvania, Rhode Island, North Carolina, and New Jersey prohibited possession of firearms by people who refused to swear loyalty oaths. [Citation.]

Prior to the adoption of the Bill of Rights in 1791, during the ratification process, the 'highly influential minority proposal' [citation], published by the Anti-Federalist delegates in Pennsylvania, suggested that the people should have a right to bear arms 'unless for crimes committed, or real danger of public injury from individuals.' [citation]. While this amendment was not adopted, it is important because it reflects the understanding of the founders that 'crimes committed,' whether dangerous or not, justified disarmament.

Founding-era criminal punishments also demonstrate the widespread acceptance of the legislatures' authority to disarm felons. In the Colonial period, legislatures prescribed death or forfeiture of a person's entire estate (presumably including firearms) as punishment for numerous nonviolent crimes (including deceit, forgery, and wrongful

taking of property). [Citation.] Even some non-capital offenses triggered the permanent loss of an offender's estate, including any firearms. For example, a 1786 New York statute punished those who counterfeited state bills of credit with life imprisonment and the forfeiture of their entire estate. [Citation.] Similarly, minor nonviolent infractions, such as hunting in prohibited areas, were punished with seizure of the firearms involved in the offenses. [Citation.]" *Id.* ¶¶ 93-96; see *Martinez*, 2024 IL App (2d) 230305-U, ¶¶ 38-41 (discussing *Brooks'* historical survey).

The court thus determined "there is a historical tradition of legislatures exercising their discretion to impose 'status-based restrictions' disarming entire 'categories of persons' who, based on their past conduct, were presumed unwilling to obey the law." *Id.* ¶ 97. Accordingly, the court concluded that "both the founding-era historical record and Supreme Court precedent support the ability of our legislature to prohibit firearm possession by people who have 'demonstrated disrespect for legal norms of society.' " *Id.* at ¶ 100.

¶ 15    The historical analogues discussed by *Brooks*—the same ones relied on by the State here— evidence a historical tradition of disarming individuals based on their demonstrated past conduct. By analogy (see *Bruen*, 597 U.S. at 30), the statutes at issue here are similarly disarming individuals based on their past conduct—their felony convictions. We therefore conclude that the armed habitual criminal and unlawful possession of a weapon by a felon statutes are "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 24.

¶ 16    Defendant's arguments to the contrary are not persuasive. Defendant argues that there is no relevant analogue supporting flat bans on felons possessing guns. However, *Bruen* explained that an exact analogue or historical twin is not required. *Bruen*, 597 U.S. at 30. Rather, a "well-established and representative analogue" will suffice. *Id.* We believe that the historical laws

discussed in *Brooks* support a historical tradition of disarming certain persons based on their past conduct. *See People v. Daniels*, 2025 IL App (1st) 230823, ¶ 44.

¶ 17 Defendant additionally argues that many of the historical analogues cited by the State and the *Brooks* court were "firmly rooted in racism, racial prejudice, bias, and discrimination and certainly would not pass constitutional muster today." *Id.* ¶ 45. However, as noted in *Daniels*, the historical laws discussed by *Brooks* that support current law disarming felons were focused on disarming persons " 'based on their past conduct' " rather than any improper animus. *Id.* ¶ 44 (quoting *Brooks*, 2023 IL App (1st) 200435, ¶ 97). The statutes here have the same focus, as they disarm certain individuals based on their past conduct—their felony convictions. Accordingly, we reject defendant's contention that the State has not shown that there is a historical analogue for the unlawful possession of a weapon by a felon and armed habitual criminal statutes.

¶ 18 In sum, we agree with the extensive case law in Illinois upholding the constitutional validity of the unlawful possession of a weapon by a felon and armed habitual criminal statutes. Defendant has not offered a persuasive reason to depart from this significant weight of authority, and we therefore reject his facial challenge to the statutes.

¶ 19                                III. CONCLUSION

¶ 20 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 21 Affirmed.

¶ 22 JUSTICE McLAREN, specially concurring:

¶ 23 While I concur with the majority's decision that defendant failed in his facial challenge to the UUWF statute, I write separately to voice my concerns regarding the majority's Second Amendment analysis. Specifically, I disagree with the conclusion that the Supreme Court has held that felons are somehow not part of "the people" included in the clear language of the amendment.

¶ 24    The majority properly identified the first part of the two-part test established in *Bruen*; to determine whether the plain text of the Second Amendment protects an individual's conduct. *Supra* ¶ 12.  However, the majority fails to properly apply the first part of the test.  The Second Amendment protects the "right of *the people* to keep and bear Arms."  (Emphasis added.) U.S. Const., amend. II.  "[The people] unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580; accord *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) ("[The people] refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community").  The majority's claim that the Illinois Appellate Court has "routinely" held that felons are not within the class of individuals protected by the Second Amendment is an overstatement, at best.

¶ 25    There is but one Illinois Appellate Court, but that court's pronouncements on whether the Second Amendment protects the rights of felons are unsettled.  See *People v. Granados*, 172 Ill. 2d 358, 371 (1996).  In addressing the constitutionality of the UUWF, this court's decisions since *Bruen* have taken two approaches.  The first, accepted here by the majority, concludes that the protections afforded by the Second Amendment apply only to 'law-abiding citizens,' and not felons like defendant.  See *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 (noting that the *Bruen* majority and concurrences repeated the phrase "law-abiding" 18 times); *People v. Martinez*, 2024 IL App (2d) 230305-U, ¶ 27 ("Defendant's challenge to the [UUWF] statute fails at the first step of the *Bruen* analysis because, contrary to defendant's assertion, felons are not included in "the people" to whom the Second Amendment refers."); *People v. Burns*, 2024 IL App (4th) 230428, ¶ 21 (determining that the *Bruen* decision does not apply to felons); *People v. Stephens*, 2024 IL

App (5th) 220828, ¶ 27 ("*Bruen* strongly suggests the test only applies when a regulation impacts a law-abiding citizen's ability to keep and bear arms").

¶ 26    The second group determines that felons are part of "the people" to whom the Second Amendment applies but holds that "there is a history and tradition dating back to the founding era of identifying dangerous individuals and disarming them." *People v. Travis*, 2024 IL App (3d) 230113, ¶ 33, *pet. for leave to appeal pending*, No. 130696 (filed May 16, 2024).   While this position is most often expressed in the Third District, it has been echoed elsewhere in the court. See, e.g., *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 89, pet. for leave to appeal pending, No. 130153 (filed Oct. 30, 2023); *People v. Miller*, 2024 IL App (2d) 230545-U, ¶ 35-40 (McLaren, J., specially concurring).

¶ 27    It is well-established however, that decisions from other districts are not binding on this court. *People v. Cooper*, 2024 IL App (2d) 220158, ¶ 71.   " '[S]tare decisis requires courts to follow the decisions of higher courts, but does not bind courts to follow decisions of equal or inferior courts.' " *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 392 n.2 (2005), quoting *Schiffner v. Motorola, Inc.*, 297 Ill. App. 3d 1099, 1102 (1998).

¶ 28    State courts are also not bound to follow decisions of the federal district courts or circuit courts of appeal. *Hinterlong v. Baldwin*, 308 Ill. App. 3d 441, 452 (1999).   Such decisions may, however, be considered persuasive authority. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 30.   Unfortunately, federal courts are also split on whether the phrase "the people" in the Second Amendment categorically excludes felons. See *United States v. Head*, 734 F. Supp. 3d 806, 814-15 (N.D. Ill. 2024)).   Some federal courts have assumed, without deciding, that felons were among "the people" and proceeded to the second prong of the *Bruen* analysis (*United States v. Stringer*, 742 F. Supp. 3d 840, 852-53 (C.D. Ill. 2024), *United States v. Wigfall*, 677 F. Supp. 3d 791, 796

(N.D. Ind. 2023)), while other federal courts found that felons were not protected under the plain text of the Second Amendment (*United States v. McKay*, No. 23 CR 443, 2024 WL 1767605, at *2 (N.D. Ill. Apr. 24, 2024), and *United States v. Hall*, No. 22 CR 665, 2023 WL 8004291, at *2 (N.D. Ill. Nov. 17, 2023)). [2]

¶ 29    Felony conviction results in the forfeiture of certain constitutional rights, including the right to vote, the right to hold office, and the right to serve on a federal jury.  But there is no clear precedent from the Supreme Court that convicted felons have lost their status as a member of "the people" in the Second Amendment.  As *Heller* explained, "the people" as used throughout the Constitution "unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580.  The Second Amendment right presumptively "belongs to all Americans." *Id*. at 581.  As the Supreme Court noted: "a felon is not always more dangerous than a misdemeanant." *Lange v. California*, 594 U.S. 295, 305 (2021).

¶ 30    I can understand why some federal courts have been persuaded that "the better interpretation of the phrase 'the people' as used in the Second Amendment is the one that comports with how the phrase is understood in other places in the Bill of Rights, including the First and Fourth Amendments." *Head*, 734 F. Supp. 3d at 814 (citing *United States v. Barwicks*, 2024 WL

---

[2] In *United States v. Williams*, a federal district court held that the federal "felon in possession" law, 18 U.S.C.A. § 922(g)(1), was unconstitutional because felons are included in "the people" protected by the Second Amendment and "none of the historical laws offered by the Government impose a 'comparable burden' on the Second Amendment right of convicted felons to keep and bear arms[.]" *United States v. Williams*, 2025 WL 296970, at *5 (S.D. Ill. Oct. 21, 2025).  I note, however, that the disposition does not discuss *Rahimi*, relies on a Third Circuit opinion which has since been remanded and decided under *Rahimi* (*United States v. Range*, 124 F. 4th 218 (3rd Cir. Dec. 23, 2024), and appears to be an outlier in its conclusion.

1521473, at *7 (N.D. Ill. Apr. 8, 2024); *United States v. Gates*, 2023 WL 5748362, at *4 (N.D. Ill. Sept. 6, 2023); and *United States v. Johnson*, 2023 WL 6690388, at *3 (N.D. Ill. Oct. 12, 2023). Following the logic of the majority, all other constitutional rights that use the phrase "the people" should also "categorically remove felons outside the protection of the pertinent right." *Gates*, 2023 WL 5748362, at *4. But this does not happen. Felons are protected against unreasonable searches and seizures as part of "the people." Similarly, a felon can peaceably assemble just like any other member of "the people." "[S]ince felons are not excluded from First or Fourth Amendment rights, neither should they be excluded from Second Amendment rights, given the Framer's consistent use of the term 'the people' throughout." *Johnson*, 2023 WL 6690388, at *3.

¶ 31    The majority's interpretation of "the people" ignores well-accepted rules of construction. The general rules governing the construction of Constitutions are the same as the rules that apply to statutes. *People ex rel. Rogerson v. Crawley*, 274 Ill. 139, 143 (1916). Our primary goal is to give effect to drafters' intent and the surest and most reliable indicator of that intent language itself, given its plain and ordinary meaning. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). "The constitution must be read and understood according to the most natural and obvious meaning of the language in order to avoid eliminating or extending its operation." *Maddux v. Blagojevich*, 233 Ill. 2d 508, 523 (2009). And where the words of the constitution are clear and unambiguous, there is no need for construction. *City of Beardstown v. City of Virginia*, 76 Ill. 34, 40 (1875). "Narrow and technical reasoning is misplaced when it is brought to bear upon an instrument framed by the people themselves for themselves, and designed as a chart, upon which every man, learned and unlearned, may be able to trace the leading principles of government." Thomas M. Cooley, A Treatise on the Constitutional Limitations, 59 (2nd Ed. 1871).

¶ 32    The phrase "the people" is used nine times in the Constitution and amendments. To follow the logic of the majority, I would have to find that "We the people of the United States" in the Preamble referred to a different subset of "the people" than in the Second Amendment. In other words, I would have to find that James Madison, the "Father of the Constitution," carelessly chose to use the phrase "the people" in five of the ten amendments in the Bill of Rights when he really meant to write "the people who are not felons" in the Second Amendment alone. Such an illogical and inconsistent interpretation is absurd.

¶ 33    While it is true that the Supreme Court repeatedly refers to "law abiding" citizens in *Heller* and *Bruen*, neither case involved the Second Amendment rights of felons. As such, this usage is dicta. As noted in *United States v. Ware*, 673 F. Supp. 3d 947 (S.D. Ill. May 19, 2023):

> "Judicial opinions should not be read like statutes but rather considered in light of the context of the case and as an explanation of the court's disposition. [Citation] Thus, every word of a judicial opinion is not a dictate but rather part of the total picture of the underlying case. The language 'law-abiding' as used in both *Heller* and *Bruen* does not alter who the Second Amendment applies to, but rather describes the individuals involved in those cases." *Id.* at 955-56.

¶ 34    Of course, I can understand why the majority finds such dicta to be attractive. But dicta remains dicta. Justice Thomas specifically called out the "passing reference" in *Heller* to felons as dicta and *Bruen*'s use of the phrase "ordinary, law-abiding citizens" was used to "describe those who were unable to publicly carry a firearm in New York." *Rahimi*, 602 U.S. at 773 n.7 (Thomas, J., dissenting). As the author of the opinion of *Bruen*, Justice Thomas should have a clear understanding of his use of the term "law abiding." Justice Thomas noted that:

"The Government's position is a bald attempt to refashion this Court's doctrine. At the outset of this case, the Government contended that the Court has already held the Second Amendment protects only "responsible, law-abiding" citizens. [Citation] The plain text of the Second Amendment quashes this argument. The Amendment recognizes "the right of the *people* to keep and bear Arms." (Emphasis added.) When the Constitution refers to "the people," the term "unambiguously refers to all members of the political community." *Heller*, 554 U.S., at 580; see also *id*., at 581 (beginning its analysis with the strong "presumption that the Second Amendment right ... belongs to all Americans"). The Government's claim that the Court already held the Second Amendment protects only "law-abiding, responsible citizens" is specious at best. *Rahimi*, 602 U.S. at 773 (Thomas, J., dissenting).

In the absence of a majority opinion of the Supreme Court specifically holding to the contrary, I find Justice Thomas's dissent persuasive. After all, should we presume that *Bruen* applies only to "law abiding" citizens of New York state since the Supreme Court described the plaintiffs with both identifiers? The Second Amendment is presumed to apply to all Americans and there is no binding precedent, or persuasive logic, to presume that *people* who are not "law abiding" are automatically excluded from "*the people*" from one specific amendment.

¶ 35    I therefore conclude that felons are included under the definition of "the people" whose rights are protected by the Second Amendment, as they are in the First and Fourth Amendments. And if felons are among "the people," the next question is whether UUWF regulates Second Amendment conduct. It does. Defendant was in possession of a handgun and the Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 10. So "the Second Amendment's plain text covers [defendant's] conduct,"

and "the Constitution presumptively protects that conduct." *Id*. at 17.  It is only under the second *Bruen* prong, historical inquiry, that I determine that the government met its burden of pointing to "historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation."  (Internal quotation marks omitted.)  *Id.* at 27.